#24621-a-JKK

**2008 SD 58**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

    v.

ISAAC SWAN,                               Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WARREN G. JOHNSON
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

FRANK GEAGHAN
Assistant Attorney General                 Attorneys for plaintiff
Pierre, South Dakota                       and appellee.

MATTHEW J. KINNEY of
Kinney & Dardis, LLP                       Attorneys for defendant
Spearfish, South Dakota                    and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 21, 2008

OPINION FILED **07/02/08**

#24621

KONENKAMP, Justice

[¶1.]        Defendant was convicted of multiple counts of child rape and one count of sexual contact with a child. He now challenges the sufficiency of the evidence, contending that the testimony related to a date not charged in the indictment and the State's proof was too general to support the verdicts. Because defendant has failed to show any unfair consequence from the testimony, we affirm.

## Background

[¶2.]        Isaac Swan married Dawn Swan and adopted Dawn's daughter, T.S., born June 27, 1990. Two other children were later born of their union. In 2001, Swan became the director of the Thunderhead Episcopal Camp, located in Lawrence County, near O'Neil Pass. It held church camps in the summer and at times housed snowmobilers in the winter. In his position as director, Swan spent many nights at the camp and would often be gone from his home in Rapid City for five or six days. His family would come to the camp every other weekend and sometimes for extended stays in the summer.

[¶3.]        During 2001, T.S. turned eleven years old. She would come to Thunderhead Camp with her family, but often would go with Swan alone. There are six cabins at Thunderhead Camp. Swan stayed in Cabin Rachel, with its king-sized bed. On occasions when T.S. went with Swan alone, T.S. testified that she slept in Swan's bed. Sometimes T.S. would bring friends, K.H., L.M., or E.A. She and her friends would also sleep in Swan's bed when she did not come with the rest of her family. According to T.S., Swan slept in the middle, with her and her friend on either side of him.

-1-

[¶4.]     T.S. loved going to Thunderhead Camp.  As she explained, she would "[p]articipate in the camps, games, campfires, stories, church up there, and learn new things."  She testified that she was at Thunderhead Camp all summer in 2001, half of the summer in 2002, and the winter of 2002.  Then at the end of winter 2002, when she was twelve or thirteen, possibly in early spring 2003, she stopped going.  According to T.S., she and Swan were no longer getting along because he was "controlling" her and any relationships she would have with boys.

[¶5.]     In January 2004, T.S. told her mother that Swan had sexually abused her.  Then, in March 2004, K.H., T.S.'s friend, revealed that Swan had sexually abused her too.  K.H. was born on September 29, 1988.  She started going to Thunderhead Camp with the Swan family in 2001.  T.S. and K.H. recounted that Swan would "touch" them while they were in the king-sized bed in Cabin Rachel.  The most common touching reported by both T.S. and K.H. was "fingering" — Swan would stick a finger or fingers inside their vaginas.  T.S. said that it happened "a lot," more than fifty percent of the nights she spent up at Thunderhead Camp.  K.H. said that Swan touched her "at least fifty times."

[¶6.]     In addition to the fingering, K.H. testified about having to "masturbate" Swan "at least ten times[.]"  She described in detail two incidents when Swan performed oral sex on her, and one incident where he "pushed her head" underneath the covers and she "put his penis" in her mouth.  T.S. also testified about having to "jack him off," but that it was not often, "one or two . . . I don't know.  Not as often."  T.S. testified Swan had her put her mouth on his penis, "Once or twice maybe."

[¶7.]    After the allegations were reported to the authorities, both T.S. and K.H. were questioned by Lora Hawkins, a forensic interviewer. Thereafter, both girls testified before a grand jury. On June 24, 2004, a Lawrence County Grand Jury indicted Swan, charging him with one count of sexual contact with a child in violation of SDCL 22-22-7, and nineteen counts of rape in violation of SDCL 22-22-1(5) (2004). All the charges were alleged to have occurred in Lawrence County, South Dakota. Ten charges related to Swan's conduct against K.H.: five "on or about Christmas 2002 through winter time, 2003," one "on or about late May, 2003," and four "on or about the month of June, 2003." The remaining ten charges related to Swan's conduct against J.H.: one "on or about and between 2001 and 2002," and nine "on or about and between the summer of 2001 and the summer of 2002."

[¶8.]    A jury convicted Swan of all nineteen counts of rape and the one count of sexual contact with a child under sixteen. Swan appeals asserting that there was insufficient evidence to find him guilty of all the charges beyond a reasonable doubt.[1]

### Standard of Review

[¶9.]    We review de novo criminal convictions for evidentiary sufficiency. State v. Plenty Horse, 2007 SD 114, ¶5, 741 NW2d 763, 764-65 (citing State v. Tofani, 2006 SD 63, ¶35, 719 NW2d 391, 400 (citing State v. Disanto, 2004 SD 112, ¶14, 688 NW2d 201, 206)). We give great deference, however, to the jury's ability to judge the credibility of the witnesses, and we view the evidence in a light most

---

1.    Counsel on appeal was not Swan's counsel at trial.

favorable to the verdict. *Id.* (citing *Tofani*, 2006 SD 63, ¶35, 719 NW2d at 400) (quoting *Jackson v. Virginia*, 443 US 307, 319, 99 SCt 2781, 2789, 61 LEd2d 560 (1979)). "We will not usurp the jury's function in resolving conflicts in the evidence, weighing credibility, and sorting out the truth." *State v. Pugh*, 2002 SD 16, ¶9, 640 NW2d 79, 82 (citing *State v. Hart*, 1996 SD 17, ¶8, 544 NW2d 206, 208).

## Analysis and Decision

[¶10.]     Swan challenges the sufficiency of evidence in the record to support his convictions. In particular, he argues that the dates used in the indictment do not coincide with the testimony from K.H. that he "fingered" her in October 2002, near Halloween. K.H. testified that the first time Swan "fingered" her and touched her breasts was in October 2002. She remembers the time because she, Swan, and T.S. had returned from visiting a haunted house display near Spearfish. Once they returned to Thunderhead Camp, K.H. recalled that the three of them went to the chapel at Thunderhead Camp and laid together on the floor with blankets. K.H. testified that while the three of them were on the floor, Swan touched her breasts and then inserted his fingers in her vagina. She said that it did not last long and occurred while T.S. was asleep.

[¶11.]     According to Swan, this October 2002 incident cannot be considered reasonably near the date charged in the indictment: "on or about Christmas 2002 through winter time, 2003." He insists that the jury could not have convicted him on this testimony, and that the rest of the evidence in the record is also insufficient to sustain his multiple convictions.

[¶12.] A specific date is not an essential element to the crimes charged here. *See* SDCL 23A-6-9; State v. Darby, 1996 SD 127, ¶10, 556 NW2d 311, 316. Thus, the fact a crime was committed on a date different from the one alleged in the indictment is not fatal to the charge. State v. Blackmon, 507 SE2d 42, 45 (NCCtApp 1998) (citation omitted). "Courts are lenient in child sexual abuse cases where there are differences between the dates alleged in the indictment and those proven at trial." State v. McGriff, 566 SE2d 776, 779 (NCCtApp 2002). "Unless the defendant demonstrates that he was deprived of his defense because of a lack of specificity, this policy of leniency governs." State v. Everett, 399 SE2d 305, 306 (NC 1991).

[¶13.] Aside from the offense of October 2002, Swan stood charged with several other sexual crimes against K.H. on other dates. Her testimony provided ample support for each conviction. She testified that she would be at Thunderhead Camp with Swan every other weekend beginning in the fall of 2002. Of the times that she was there, she testified that Swan "fingered" her repeatedly, "at least fifty times." "Fingering" according to K.H. was when Swan inserted his fingers inside her vagina.

[¶14.] Although "at least fifty times" is general, the jury heard K.H. explain that when she and Swan were sleeping in the same bed in Cabin Rachel, Swan would roll toward her, rub her breasts, pull her pants down just enough, and then quietly insert his fingers in her vagina. She explained how her legs were positioned, how long it usually lasted, and how these incidents did not make much noise. K.H. said the fingering occurred many times while T.S. was sleeping on the

other side of Swan in the same bed and that T.S. never woke up. She testified about times when he fingered her while T.S.'s friend E.A. was sleeping in the bed with Swan and her during May or June 2003. In identifying additional instances, K.H. said that Swan fingered her twice when Scott Williamson was there for convocation, which was in June 2003.

[¶15.] In addition to her testimony describing how Swan inserted his fingers in her vagina, K.H. detailed two other times when Swan "ate her out." "Eating out," according to K.H., was when Swan would put his tongue inside her vagina. K.H. testified about one night when Swan and she were sleeping in Cabin Rachel and they had to go to the bathroom. They went to the SuperTent, which is not an actual tent, but another building at Thunderhead Camp. After they each separately used the restroom, K.H. explained that Swan took her to a different room in the SuperTent, positioned her on the side of a bed, pulled her pants down to her ankles, and "ate her out." She said that he "ate her out" one other time in Cabin Rachel. K.H. described two times she gave Swan "head" in Cabin Rachel, once when he pushed her head down under the covers and she put his penis in her mouth, and another time, again in Cabin Rachel.

[¶16.] Ironically, K.H., who was thirteen and fourteen years old during these times, cherished the special treatment she received from Swan. Swan, clearly taking advantage of K.H.'s admiration of him, continued to rape her, making sure to be quiet enough not to wake the other young girl sleeping in the bed next to him. When his desires might create more noise, Swan was sure to have K.H. accompany him to a different location. Based on our review of the record, we think the evidence

is more than sufficient to uphold the jury's decision that Swan raped K.H. nine times and had sexual contact with her at least once.

[¶17.] Swan also challenges the sufficiency of the evidence to sustain his convictions for ten rapes of T.S., his adopted daughter. According to Swan, because T.S. did not identify specific instances and there was no corroborating evidence, T.S.'s general testimony that it happened "a lot" or "all the time" was insufficient. The lack of corroborating evidence alone will not impugn the convictions. We have repeatedly stated, "In South Dakota it is not essential to a sexual offense conviction that the testimony of the victim be corroborated by other evidence." State v. Sieler, 397 NW2d 89, 93 (SD 1986) (quoting State v. Grey Owl, 316 NW2d 801, 804 (SD 1982)); *see also* State v. Bunger, 2001 SD 116, ¶9, 633 NW2d 606, 609.

[¶18.] According to T.S., Swan began raping her when she was seven years old, before he became the director of Thunderhead Camp. She testified in great detail about these rapes, which happened either outside Lawrence County or outside the time frames alleged in the indictment. Because these incidents did not happen in times and locations alleged in the indictment, they cannot be used to support the jury's verdict. Rather, we must decide whether there was sufficient evidence to support the jury's finding that Swan raped T.S. ten times "on or about and between the summer of 2001 and the summer of 2002, in the County of Lawrence."

[¶19.] T.S.'s testimony, although very detailed for incidents not at issue, was general with respect to the times and location alleged in the indictment. She testified that "[i]t happened all the time, pretty much" after she started going to

Thunderhead Camp. She explained that the most common thing that happened was "fingering," when "[h]is finger would go in [her] vaginal area." It happened, T.S. testified, "like three, four days out of the week." She agreed that it would happen more than fifty percent of the time that she was at Thunderhead Camp. Sometimes, according to T.S., it happened when K.H. was sleeping in the bed with her and Swan. She explained that Swan's fingering of her did not make much noise, "I mean, we didn't have to move really." She also stated that her clothes would be on when this happened.

[¶20.] T.S. testified that while at Thunderhead Camp, Swan also had her "[j]ack him off" and when she did this he would touch her breast or "finger" her. That happened one or two times. He also gave her "oral sex" in Cabin Rachel, "[o]n the big bed." She also put his penis in her mouth a couple times at the camp. The time frame, according to T.S., was during the summer of 2001, and the winter of 2002. She remembered it happening during the winter of 2002 because that was when the snowmobilers were there. She testified that she finally quit going to Thunderhead Camp with Swan because she was becoming more interested in boys and Swan was treating her differently, giving her the silent treatment.

[¶21.] Children, especially those who suffer traumatic events, cannot always remember precise times and dates.[2] "[I]n the interests of justice and recognizing

---

2. "It would be a very weak rule of law that would permit a man to ravish a fifteen year old girl . . . and then say in effect: You cannot convict me of this crime, as you did not guess the right date." *See* State v. Rogers, 283 P 44, 45 (Idaho 1929); Cunningham v. State, 683 P2d 500, 502 (Nev 1984), *cert. denied*, Cunningham v. Nevada, 469 US 935, 105 SCt 336, 83 LEd2d 272 (1984).

that young children cannot be expected to be exact regarding times and dates, a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of the evidence." State v. Wood, 319 SE2d 247, 249 (NC 1984) (citations omitted). Although in certain circumstances general testimony on dates and times might not be sufficient, such as in cases where an alibi is alleged, T.S.'s testimony here provided the jury with sufficient evidence to convict Swan of ten counts of rape in violation of SDCL 22-22-1(5) (2004).

[¶22.]      T.S., Swan's daughter by adoption, testified that she spent every night at Thunderhead Camp with him during the summer of 2001, and that he raped her, at the very least, three or four nights a week. Swan has failed to show any prejudice from this testimony. There is no suggestion here that Swan's defense depended on his being able to pin down the exact dates when the crimes charged against him occurred. Rather, the primary question in this trial was whether the jury believed the child at all. Was Swan regularly molesting her? The jury chose to believe the child. In the circumstances of this case, the evidence was sufficient.

[¶23.]      Affirmed.

[¶24.]      GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.