#25439-a-GAS

**2010 S.D. 74**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

TODD RONALD BRIM,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JAMES W. ANDERSON
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.

MARK KADI
Minnehaha County Office
 of the Public Advocate
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellant.

* * * *

ARGUED AUGUST 25, 2010

OPINION FILED **09/15/10**

#25439

SEVERSON, Justice

[¶1.]     Todd Ronald Brim was convicted of ten counts of Rape in the Second Degree and five counts of Sexual Contact With a Child Under Sixteen. Brim appeals, raising four issues: whether the trial court (1) erred by denying his motion for judgment of acquittal; (2) erred by not properly admonishing the jury and venire at every recess and adjournment; (3) abused its discretion by not immediately excusing a juror with outside knowledge of the case; and, (4) abused its discretion by sentencing him to 325 years in the state penitentiary. We affirm on all issues.

## BACKGROUND

[¶2.]     At trial, evidence was presented that in March 2008, S.G. informed his mother that Brim had sexually abused him, his brother, and several neighborhood children for many years. S.G. met Brim, a neighbor and family friend, in 2004. S.G. and several neighborhood children frequently watched television, played computer games, and spent the night at Brim's house. Brim soon began touching S.G. on the shoulder or leg, and within a few months, the contact escalated to oral and anal sex. The sexual abuse took place not only at Brim's home, but also at Brim's workplace and several hotels in Sioux Falls. The abuse occurred nearly every weekend for four years until S.G. reached the age of sixteen.

[¶3.]     In the course of their investigation, the police interviewed three neighborhood children that Brim allegedly abused. K.G., S.G.'s brother, reported that he met Brim in 2002 or 2003 when he was ten or eleven years old. The abuse, which included oral and anal sex, began sometime shortly thereafter, occurred nearly every weekend, and continued through May 2008. Like the others, R.H.

- 1 -

began socializing with Brim when he was approximately ten years old. R.H. reported that Brim first engaged him in oral and anal sex when he was twelve or thirteen. R.H. alleged that the abuse occurred "too many [times] to count" and continued through May 2008. T.P. and J.P., brothers who lived in the same neighborhood, made similar allegations against Brim.

[¶4.] In May 2008, a Minnehaha County grand jury indicted Brim on eleven counts of Rape in the Second Degree and five counts of Sexual Contact With a Child Under Sixteen. The State later dismissed one count of Rape in the Second Degree.[1] The case proceeded to trial in July 2009. S.G., K.G., R.H., T.P., and J.P. testified about the abuse in great detail, but were unable to provide dates specifying when the abuse occurred. At the close of the evidence, Brim's counsel made a motion for judgment of acquittal, which the trial court denied. The jury returned a guilty verdict on ten counts of Rape in the Second Degree and five counts of Sexual Contact With a Child Under Sixteen. Following a pre-sentence investigation, the trial court sentenced Brim to serve consecutive penitentiary sentences, totaling 325 years, for his multiple crimes.

## ANALYSIS AND DECISION

[¶5.] **1. Whether the trial court erred by denying Brim's motion for judgment of acquittal.**

---

1. Count X of the indictment charged that Brim committed Rape in the Second Degree of S.G. on or about May 2008. Because S.G. was detained at the Juvenile Detention Center at that time, the State dismissed Count X.

[¶6.]      Brim argues that the trial court erred by denying his motion for judgment of acquittal. "The denial of a motion for judgment of acquittal presents a question of law" that we review de novo. *State v. Klaudt*, 2009 S.D. 71, ¶ 14, 772 N.W.2d 117, 122 (citations omitted). In measuring the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citations omitted). "[W]e accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict." *State v. Jensen*, 2007 S.D. 76, ¶ 7, 737 N.W.2d 285, 288 (citation omitted). "Moreover, the jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence." *Id.* (citations omitted). This Court will not resolve conflicts in the evidence, assess the credibility of witnesses, or evaluate the weight of the evidence. *Id.* (citations omitted).

[¶7.]      Brim argues that the State did not meet its burden of proving beyond a reasonable doubt that the abuse occurred within a reasonable time of the dates charged in the indictment. The indictment charged eleven counts of Rape in the Second Degree:[2] one count of rape against K.G. in 2004; five counts of rape against S.G. occurring in 2004, 2005, 2006, 2007, and May 2008;[3] and, five counts of rape

---

2.      SDCL 22-22-1(2) defines Rape in the Second Degree as "an act of sexual penetration accomplished with any person . . . [t]hrough the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution[.]"

3.      The State eventually dismissed this count of the indictment.

against R.H. occurring in 2004, 2005, 2006, 2007, and May 2008. The indictment also charged five counts of Sexual Contact With a Child Under Sixteen:[4] one count of sexual contact with J.P. in 2002; one count of sexual contact with T.P. in 2002; and, three counts of sexual contact with K.G. in 2005, 2006, and 2007. Because the State presented limited evidence supporting the specific dates, Brim asserts that the trial court erred by denying his motion for judgment of acquittal.

[¶8.]    It is not always possible to know when crimes involving sexual abuse of minors occurred. *State v. Muhm*, 2009 S.D. 100, ¶ 23, 775 N.W.2d 508, 515. "Children, especially those who suffer traumatic events, cannot always remember precise times and dates." *State v. Swan*, 2008 S.D. 58, ¶ 21, 753 N.W.2d 418, 423.

> Multiple sex offenses committed by adults upon . . . children over a long period of time are very likely to result in an amalgamation of the crimes in the child's mind. The child is unlikely to be able to give any testimony approximating the date of any one separately describable offense even in the uncomplicated case. Where the number of offenses is so numerous even an adult would not be able to count them, the child's testimony will often be reduced to a general, and customarily abbreviated, recitation of what happened on a continuing basis.

*Muhm*, 2009 S.D. 100, ¶ 28, 775 N.W.2d at 517 (quoting *People v. Jones*, 51 Cal.3d 294, 313, 270 Cal.Rptr. 611, 792 P.2d 643, 653-54 (1990)).

[¶9.]    This Court is thus "lenient in child sexual abuse cases where there are differences between the dates alleged in the indictment and those proven at trial."

---

4.    SDCL 22-22-7.1 defines Sexual Contact With a Child Under Sixteen as "any touching, not amounting to rape, whether or not through clothing or other covering, of the breasts of a female or the genitalia or anus of any person with the intent to arouse or gratify the sexual desire of either party."

*Swan*, 2008 S.D. 58, ¶ 12, 753 N.W.2d at 421 (citation omitted). Although an indictment should be as specific as possible, time is not a material element of crimes involving sexual abuse of minors. *Muhm*, 2009 S.D. 100, ¶¶ 23, 26, 775 N.W.2d at 515-16 (citing *State v. Nuzum*, 2006 S.D. 89, ¶ 18, 723 N.W.2d 555, 559; *State v. Basker*, 468 N.W.2d 413, 417 (S.D. 1991)). *See Swan*, 2008 S.D. 58, ¶ 12, 753 N.W.2d at 421 (citing *State v. Darby*, 1996 S.D. 127, ¶ 10, 556 N.W.2d 311, 316 (additional citation omitted)); *State v. Smith*, 1999 S.D. 83, ¶ 27, 599 N.W.2d 344, 351; *State v. Floody*, 481 N.W.2d 242, 247 (S.D. 1992); *State v. Wurtz*, 436 N.W.2d 839, 842-43 (S.D. 1989); *State v. Swallow*, 350 N.W.2d 606, 608 (S.D. 1984). Therefore, "the fact [that] a crime was committed on a date different from the one alleged in the indictment is not fatal to the charge." *Swan*, 2008 S.D. 58, ¶ 12, 753 N.W.2d at 421 (citation omitted). "Unless the defendant demonstrates that he was deprived of his defense because of a lack of specificity, this [Court's] policy of leniency governs." *Id.* (citation omitted).

[¶10.]     The lack of precise dates of the abuse did not deprive Brim of his defense. As in *Muhm*, Brim's defense was a complete denial of any sexual act occurring during the entire period of time covered by the indictment. *See* 2009 S.D. 100, ¶ 24, 775 N.W.2d at 515. He presented no alibi evidence, raised no statute of limitations defense, and did not argue that the State failed to establish the victims' ages at the time of the abuse. Instead, Brim attempted to undermine the victims' credibility by pointing out the inconsistencies in their stories and their inability to provide precise dates. *See id.* ¶ 35, 775 N.W.2d at 521. Thus, the essence of the trial was the credibility of the victims' testimony. *See id.* (citation omitted).

[¶11.]     This question was within the exclusive province of the jury, and the jury resolved this basic credibility dispute against Brim. *See id.* (citation omitted). Evidence was presented that Brim engaged these children in oral or anal sex nearly every weekend for several years. Although the children were not able to provide exact dates of the abuse, they established their approximate age at the time of the abuse and described when the abuse occurred in relation to other events. At trial, the State presented dated receipts of Brim's weekend visits to Sioux Falls hotels where the abuse was alleged to have occurred. The State's eventual dismissal of Count X, which it could not prove occurred within a reasonable time of the date charged in the indictment, demonstrates its diligence in ensuring the accuracy of the indictment. *See supra* ¶ 4 n.1. The victims' testimony and the evidence presented at trial were consistent with the dates charged in the indictment, and the precise dates of the abuse were not critical to the issues in this case. We conclude that the trial court did not err by denying Brim's motion for judgment of acquittal.

[¶12.]     **2.     Whether the trial court erred by not properly admonishing the jury and venire at every recess and adjournment.**

[¶13.]     Brim argues that the trial court erred by not admonishing the first panel of venirepersons to avoid contact with the media.[5] But before the parties exercised their peremptory challenges, the trial court provided defense counsel the opportunity to inquire whether the venirepersons had seen or heard any media accounts of the proceedings. Four individuals indicated that they had, including

---

5.     The second panel of venirepersons was admonished to avoid contact with the media.

Juror S.G. Outside the presence of the venire, Juror S.G. stated: "KELOLAND news said it's the second day in the Brim trial and that Mr. Brim is a convicted sex offender." Because Juror S.G. knew of Brim's prior conviction, the trial court excused him. The three other venirepersons were also questioned, but the trial court determined that they had not seen or heard any prejudicial media accounts of the proceedings. Of those three individuals, only Juror T.J., who saw a news report on a different case, served on the jury. The trial court's failure to admonish the first panel of venirepersons does not constitute reversible error as there is no indication that the failure to do so affected the verdict in this case. *See State v. Iron Necklace*, 430 N.W.2d 66, 78 (S.D. 1988) (citing *State v. Lang*, 354 N.W.2d 723 (S.D. 1984); *Kost v. State*, 344 N.W.2d 83 (S.D. 1984)).

[¶14.] Brim also argues that the trial court erred by not admonishing the jury in accordance with SDCL 23A-24-5 at every recess and adjournment. SDCL 23A-24-5 sets forth the admonishment to be given to jurors at each adjournment:

> Jurors shall, at each adjournment of court, whether permitted to separate or kept in charge of officers, be admonished by the court as follows: You are reminded that you are not to discuss any aspect of this case among yourselves or with anyone else and that you should not form or express any opinion on the case until it is given to you for decision.

Because the record reflects that the trial court's admonishment of the jury at each recess and adjournment was in substantial compliance with SDCL 23A-24-5, Brim has not established reversible error on this issue.

[¶15.] Brim finally argues that the trial court erred by not admonishing the jury to avoid contact with the media. The trial court did not instruct the jury to avoid contact with the media at each recess, but it did admonish the jury regarding

media contact at the end of the proceedings each day. The trial court took several other steps to ensure that the jury understood its duty to avoid contact with the media. It specifically admonished the venire to avoid contact with the media. Also, before finally selecting the jury, the trial court permitted defense counsel to inquire whether the venirepersons faithfully adhered to the prior admonishment and avoided contact with the media. The trial court excused Juror S.G., the venireperson who accessed prejudicial material. And although the trial court's admonishments were not ideal, the jury was cautioned not to come into contact with the media at the end of the first and second days of trial. In light of these repeated admonishments, the trial court's failure to admonish the jury at each recess to avoid contact with the media does not constitute reversible error. *See Iron Necklace*, 430 N.W.2d at 78. *See also McDowell v. Leapley*, 984 F.2d 232, 234 (8th Cir. 1993); *United States v. Dixon*, 913 F.2d 1305, 1312 (8th Cir. 1990).

[¶16.] **3.      Whether the trial court abused its discretion by not immediately excusing a juror with outside knowledge of the case.**

[¶17.]      Brim argues that the trial court abused its discretion by not immediately excusing Juror J.R., a juror with outside knowledge of the case. Following the direct examination of R.H., Juror J.R. indicated that she needed to privately speak with the trial judge. Outside the presence of the jury, she informed the judge that she was a good friend of Brim's boyfriend. Brim moved to excuse Juror J.R. The trial court denied the motion, but later granted Brim's motion to remove Juror J.R. during the selection of the alternate jurors. In removing Juror J.R., the trial court stated in the presence of the jury: "We are going to take two

people off the list. The lady in the back row, third from the back, there is some concern about information that you may or may not have, so I am going to excuse you from the trial."

[¶18.] Brim argues that Juror J.R. should have been immediately excused and that the failure to do so raised the risk that the jury was contaminated by Juror J.R.'s outside knowledge of the case. "A trial court has broad discretion in determining juror disqualification." *State v. Verhoef*, 2001 S.D. 58, ¶ 12, 627 N.W.2d 437, 440 (citation omitted). "To reverse a trial court's decision to refuse to excuse a juror for cause, actual, material prejudice must be shown." *Id.* (citation omitted). Juror J.R. did not participate in jury deliberations, and Brim presented no evidence that Juror J.R. used her knowledge of the case to influence the jury. Indeed, the trial court admonished the jurors not to discuss the case amongst themselves at each recess and adjournment, and it is presumed that jurors understand and abide by the trial court's instructions. *Gettysburg Sch. Dist. 53-1 v. Helms & Assoc.*, 2008 S.D. 35, ¶ 11, 751 N.W.2d 266, 271 (citing *First Nat'l Bank of Minneapolis v. Kehn Ranch, Inc.*, 394 N.W.2d 709, 720 (S.D. 1986)). Consequently, Brim has not demonstrated that the jury was contaminated by Juror J.R.'s outside knowledge of the case and has not established prejudice.

[¶19.] **4. Whether the trial court abused its discretion by sentencing Brim to 325 years in the state penitentiary.**

[¶20.] Brim has also appealed his sentence, claiming it constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Sentencing requires the exercise of discretion, and the abuse of discretion standard therefore applies. *State v. McKinney*, 2005 S.D. 74, ¶ 26, 699

N.W.2d 460, 468 (quoting *State v. Herrmann*, 2004 S.D. 53, ¶ 26, 679 N.W.2d 503, 511). "It is well-settled that we employ very limited principles in our constitutional review of sentences." *Steichen v. Weber*, 2009 S.D. 4, ¶ 30, 760 N.W.2d 381, 393-94 (citations omitted). "These principles include giving 'substantial deference to the [L]egislature's broad authority to determine the types and limits of punishment[.]'" *Id.* (quoting *State v. Dubois*, 2008 S.D. 15, ¶ 41, 746 N.W.2d 197, 210 (quoting *State v. Garber*, 2004 S.D. 2, ¶ 28, 674 N.W.2d 320, 327)). This Court has repeatedly said that "a sentence within the statutory maximum will not be disturbed on appeal." *State v. Bonner*, 1998 S.D. 30, ¶ 10, 577 N.W.2d 575, 578 (citing *State v. Kaiser*, 526 N.W.2d 722, 726 (S.D. 1995)).

[¶21.]     In evaluating whether Brim's sentence constitutes cruel and unusual punishment under the Eighth Amendment, "[w]e first determine whether the sentence appears grossly disproportionate." *See Steichen*, 2009 S.D. 4, ¶ 30, 760 N.W.2d at 394 (citations omitted). "To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court." *Id.* (citations omitted).

> An appropriate sentence requires that: "the sentencing court should 'acquire a thorough acquaintance with the character and history of the man before it.' This study should examine the defendant's 'general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record.'"

*Bonner*, 1998 S.D. 30, ¶ 19, 577 N.W.2d at 580 (citations omitted). "We also consider the gravity of the offense and the harshness of the penalty, and other relevant factors, such as the effect this type of offense has on society." *Steichen*, 2009 S.D. 4, ¶ 30, 760 N.W.2d at 394 (internal quotations and citations omitted). "If

the sentence does not appear grossly disproportionate, no further review is necessary." *Id.* (citations omitted). "If the sentence does appear grossly disproportionate, an intra- and inter-jurisdictional analysis shall be conducted." *Id.* (citations omitted).

[¶22.]        Brim's sentence does not appear grossly disproportionate. Rape in the Second Degree is a Class 1 felony, and the maximum statutory sentence is a fifty-year period in the state penitentiary and a $50,000 fine. SDCL 22-22-1(2); SDCL 22-6-1(4). Sexual Contact With a Child Under Sixteen is a Class 3 felony, which is punishable by a fifteen-year sentence in the state penitentiary and a $30,000 fine. SDCL 22-22-7; SDCL 22-6-1(6). The trial court sentenced Brim to twenty-five years on each count of rape and fifteen years on each count of sexual contact to be served consecutively. Brim's sentence on each offense was within the statutory maximum and is therefore afforded "substantial deference." *See Steichen*, 2009 S.D. 4, ¶ 30, 760 N.W.2d at 394. It was also well within the trial court's discretion to impose consecutive sentences. *See* SDCL 22-6-6.1.[6] Furthermore, the trial court had the benefit of a pre-sentence investigation, and the sentence, while harsh, was appropriate given the gravity of Brim's offenses, the effect these offenses have on society, and Brim's very high likelihood of recidivism. *See Steichen*, 2009 S.D. 4,

---

6.      SDCL 22-6-6.1 provides:

> If a defendant is convicted of two or more offenses, regardless of when the offenses were committed or when the judgment or sentence is entered, the judgment or sentence may be that the imprisonment on any of the offenses or convictions may run concurrently or consecutively at the discretion of the court.

¶ 30, 760 N.W.2d at 394.  As a result, Brim's punishment "does not appear grossly disproportionate, and no further review is necessary."  *See id.*

[¶23.]    Affirmed.

[¶24.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.