#29145-a-SPM
**2021 S.D. 26**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

    v.

MANUEL JESUS FRIAS,                     Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE NATALIE DAMGAARD
Judge

\* \* \* \*

JASON R. RAVNSBORG
Attorney General

CHELSEA WENZEL
JONATHAN VAN PATTEN
Assistant Attorneys General
Pierre, South Dakota                     Attorneys for plaintiff and
                                        appellee.


MARK KADI
LYNDSAY DEMATTEO of
Minnehaha County Office
   of the Public Advocate
Sioux Falls, South Dakota                     Attorneys for defendant and
                                        appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
JANUARY 11, 2021
OPINION FILED **04/21/21**

#29145

MYREN, Justice

[¶1.] The State charged Frias with robbery, second-degree murder, first-degree manslaughter, and additional offenses not at issue in this appeal. Frias objected to the circuit court's instruction on robbery's included offense of attempted robbery. After the State's case-in-chief, the circuit court denied Frias's motion for judgment of acquittal for the at-issue counts. The jury found Frias guilty of second-degree murder and first-degree manslaughter. It also found Frias not guilty of robbery. On the verdict form, the jury failed to circle any verdict regarding the charge of attempted robbery. Following the jury trial, Frias renewed his motion for judgment of acquittal and filed a motion to arrest judgment for the second-degree murder and first-degree manslaughter convictions. After a hearing, the circuit court denied both motions. Frias appeals, arguing that the circuit court erroneously overruled his objection to the inclusion of a jury instruction regarding attempted robbery and erred by denying his motion for judgment of acquittal and his motion to arrest judgment. We affirm.

**Facts and Procedural History**

[¶2.] In February 2018, a grand jury indicted Manuel Jesus Frias (Frias) on twelve counts. The counts relevant to this appeal include second-degree murder with a depraved mind, first-degree manslaughter with a dangerous weapon, and attempted first-degree robbery.

[¶3.]　　　　The events leading to the charges began on the evening of January 4, 2018. Corey James Zephier (Zephier), Maria LeClair (LeClair)[1], and Jacqueline Nycole Zephier (Nycole)[2] were at Scarlett O'Hara's nightclub (Scarlett's) in Sioux Falls, South Dakota. Around 11 p.m., the party left Scarlett's to pick up Frias. Frias was at his apartment with Leighlonnie Goodsell (Goodsell).[3] When the party arrived, Frias showered, and they all smoked methamphetamine (meth). Frias, LeClair, and Zephier then left for Scarlett's around 1 a.m.

[¶4.]　　　　While in the shower, Frias received a text message from Crystal Habben (Habben). Habben was Frias's friend and regularly purchased drugs from him. She contacted Frias because earlier in the evening Samuel Louis Crockett (Crockett) asked her to acquire meth. Habben used drugs with and sold drugs for Crockett, but this was the first time he asked her to obtain meth.

[¶5.]　　　　Frias testified that he told Habben he would bring the meth to Lake Andes the following day, as was their usual practice. But she informed Frias that she had someone to drive her to Sioux Falls, and she would pick up the meth that evening. Frias thought the drug deal would occur at 2 a.m. He testified that the plan was for Habben to drive up, get into his car, drive around, do the transaction, and then he would drop her off. He claimed Habben told him that he needed to find a location because the person she was with wanted to weigh the meth. Habben

1.　　　Maria LeClair was the girlfriend of Zephier and is the mother of his child.

2.　　　Jacqueline Nycole Zephier is Zephier's sister.

3.　　　Leighlonnie Goodsell was a friend and was intimate with Frias.

suggested Beresford or Wild Water West, but Frias said to meet at 700 West Rice Street in Sioux Falls (Rice Street Apartments), Zephier's former residence.

[¶6.] Contrary to Frias's testimony, Habben testified that Frias told her, "[W]e should hit a lick." Several experts testified that, among other things, "lick" can mean "robbery." Habben testified that Frias's plan was for her to get into his car, and then they would drive away with Crockett's money. She claimed that they were never going to provide meth to Crockett.

[¶7.] Around 1:42 a.m., Frias, Zephier, and LeClair left Scarlett's and drove to Zephier's mother's apartment. At roughly 2:13 a.m., the trio journeyed to Walmart, where LeClair fell asleep in the car. Frias and Zephier attempted to purchase ammunition for Zephier's RAS47 at the Walmart.[4] A Walmart employee informed them that it was against store policy to sell ammunition between 10 p.m. and 7 a.m. They spoke with an assistant manager about the store's policy but were unsuccessful in purchasing ammunition. They left Walmart around 2:57 a.m. and went to Frias's apartment.

[¶8.] Goodsell received a text at 2:53 a.m. from Frias stating, "Why you leave, I went to hit this lick." Frias testified that Goodsell had taken his car's title earlier that evening, and he sent the message to encourage her to return it. Zephier and Frias left Frias's apartment to meet up with Goodsell. On their way to meet Goodsell, around 5 a.m., Habben notified Frias that she was in town. Frias changed course to meet Habben at the Rice Street Apartments.

---

4. An RAS47 is a semi-automatic rifle, similar to an AK-47.

[¶9.] When Habben exited her vehicle at the Rice Street Apartments, Crockett retrieved a handgun from the backseat and then followed her. She asked Crockett why he had a gun, and he told her to keep moving. At this time, Habben had Crockett's money in her purse. Frias was waiting inside the front door of the apartment. He opened the locked door to allow them to enter. They began to climb the first flight of stairs with Habben in the lead, followed by Frias, and then Crockett. Zephier was already in the building.

[¶10.] Habben testified that Crockett and Frias started arguing while she was at the top of the stairs. When she reached the second floor, she saw Zephier standing there with his RAS47. As Crockett and Frias were arguing, Crockett pulled out his gun. Habben testified that she saw Zephier run down the stairs with his RAS47, yelling, "Give me the money, give me the money." At some point, Habben turned to see Crockett shoot Zephier. She heard a bunch of gunshots, and then all three men were outside. When Habben went outside, she saw Zephier motionless on the ground and Crockett on the ground trying to shoot Frias. She testified that Frias kicked the gun out of Crockett's hand. Frias then turned towards her and said they needed to leave. Habben testified that Frias had no wounds and did not call 911.

[¶11.] Frias's account of the events differs. Frias testified that he did not expect Crockett to get out of the vehicle. He had told Habben that he did not want to meet anyone. He stated that he decided to go ahead with the meeting because he wanted to complete the deal. According to his version, as the three were walking up the stairs, he turned around to see Crockett pulling out a gun. He then jumped on

Crockett and held the gun against Crockett's body. As a result, Frias could not grab his own weapon. They struggled down the stairs ending up outside, where Frias slipped on the steps, pushing himself away from Crockett. Frias was then able to pull out his gun. Frias testified that, at this moment, Zephier ran out of the apartment building swinging his RAS47. Zephier hit Crockett in the back with the gun. Crockett then started shooting at both Zephier and Frias. Frias saw Crockett shoot Zephier, which caused him to shoot Crockett. Frias testified that he tried to help Zephier get up, but Zephier would not move. Frias then told Habben they needed to leave. Frias claimed that he did not intend to rob Crockett. He also stated that he did not receive any of Crockett's money from Habben.

[¶12.] When police officers arrived at the scene, they discovered the bodies of Zephier and Crockett. Officers reported that Zephier was clearly deceased with the RAS47 by his body. Crockett was alive, groaning, and had his hand on his gun.

[¶13.] Zephier sustained three gunshot wounds from roughly five feet away. Crockett sustained gunshot wounds to the back-right side of his head, mid-back traveling through his body to his shoulder, and right palm. He also had an inch-long curved laceration on his scalp inflicted from a frontal blow. None of the experts could testify with certainty about the distance between Crockett and his shooter.

[¶14.] On January 16, law enforcement apprehended Frias in South Sioux City, Nebraska. A jury trial commenced on August 5, 2019. The State requested the circuit court to include instructions on the included offense of attempted robbery. Frias objected because the State did not charge attempted robbery in the indictment. The circuit court granted the State's motion and instructed the jury

that, if it found the evidence insufficient to establish robbery, it must then consider if Frias *attempted* to commit a robbery.

[¶15.] Among other counts, the jury returned a verdict of not guilty of robbery. However, the jury did not circle "guilty" or "not guilty" for the included offense of attempted robbery. The verdict form included an instruction after the robbery charge stating, "**Only if you find the Defendant NOT GUILTY as to Count 8 [robbery], do you need to consider the included offense of Attempted Robbery." The circuit court received the verdict form and read it out loud in open court. When the court reached the attempted robbery count, it stated, "The lesser included one is not designated." The court then continued to read the remaining counts. The jury found Frias guilty, among other counts, of second-degree murder and first-degree manslaughter with a dangerous weapon.

[¶16.] After reading the verdict, the court held a bench conference off the record. It then dismissed the jury and asked counsel if they had anything to add to the record before they adjourned. Both parties responded, "no." The parties did not make a record of the bench conference, and as a result, the parties did not place their consent to the jury's discharge on the record.

[¶17.] In August 2019, Frias filed a motion to arrest judgment, arguing that the indictment did not charge the offense of attempted robbery, and the court did not have jurisdiction to proceed to sentencing. Frias also filed a renewed motion for judgment of acquittal. He argued that insufficient evidence established the element of depraved mind, and the State failed to show that self-defense did not justify his killing of Crockett.

[¶18.]     The State notified Frias and the circuit court that it was no longer proceeding on the attempted robbery charge. Frias objected, claiming that South Dakota's statutes do not authorize this action. During the hearing on Frias's motions, Frias acknowledged that the circuit court presented his requested self-defense instructions, allowed his arguments on self-defense, and did not prevent him from presenting his theory of the case for self-defense.

[¶19.]     The circuit court denied Frias's motion for judgment of acquittal because sufficient evidence supported the verdict. It also rejected Frias's motion to arrest judgment. However, it noted that it committed an error by dismissing the jury without placing the parties' consent on the record but concluded that the error was not prejudicial. At Frias's sentencing hearing, the court orally entered a judgment of acquittal on the attempted robbery offense.[5] After imposing a life sentence on the second-degree murder conviction, the circuit court did not impose a sentence on the first-degree manslaughter conviction.

[¶20.]     Frias appeals, raising three issues. We need only address two:[6]

  1.   Whether the circuit court erred by denying Frias's motion for judgment of acquittal.

---

5.   The Judgment and Sentence entered for the counts upon which Frias was convicted states that the court entered a judgment of acquittal for attempted robbery, however, no separate written judgment of acquittal appears in the record.

6.   Frias also sought review of the circuit court's decision to instruct the jury on the included offense of attempted robbery. We need not address this issue because the circuit court acquitted Frias of attempted robbery. *See State v. Kvasnicka*, 2013 S.D. 25, ¶ 24, 829 N.W.2d 123, 129 (issue before the Court was moot because defendant was acquitted of disputed count).

2.  Whether the circuit court erred by denying Frias's motion to arrest judgment.

### Analysis and Decision

***1.  Whether the circuit court erred by denying Frias's motion for judgment of acquittal.***

[¶21.]    Frias argues that the circuit court erred by denying his motion for judgment of acquittal on the homicide convictions. "We review a denial of a motion for judgment of acquittal de novo." *State v. Armstrong*, 2020 S.D. 6, ¶ 12, 939 N.W.2d 9, 12. "In measuring the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83 (internal quotation marks omitted). "[T]he jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence." *Id.* "In determining the sufficiency of the evidence, this Court will not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence." *State v. Bausch*, 2017 S.D. 1, ¶ 33, 889 N.W.2d 404, 413.[7]

[¶22.]    For Frias's second-degree murder conviction, he claims the State failed to establish that he acted with a depraved mind because Crockett started the altercation, it only lasted seconds, and Crockett posed a lethal threat.

---

7.  We decline to adopt the manifest weight of the evidence standard advanced by Frias. It runs contrary to our precedent by requiring this Court to weigh the credibility of the evidence. *See State v. Swan*, 2008 S.D. 58, ¶ 9, 753 N.W.2d 418, 420 ("We will not usurp the jury's function in resolving conflicts in the evidence, weighing credibility, and sorting out the truth.") (quoting *State v. Pugh*, 2002 S.D. 16, ¶ 9, 640 N.W.2d 79, 82).

[¶23.]     "Homicide is murder in the second degree if perpetrated by any act imminently dangerous to others and evincing a depraved mind, without regard for human life, although without any premeditated design to effect the death of any particular person . . . ." SDCL 22-16-7. A depraved mind requires, "less culpability than the element of premeditation required for first-degree murder." *State v. Harruff*, 2020 S.D. 4, ¶ 39, 939 N.W.2d 20, 30 (citing *State v. McCahren*, 2016 S.D. 34, ¶ 10, 878 N.W.2d 586, 592). "If a person is able to act with a lack of regard for the life of another, then that person can be convicted of second degree murder." *State v. Laible*, 1999 S.D. 58, ¶ 13, 594 N.W.2d 328, 332 (internal quotation marks omitted).[8] "[W]hether conduct is imminently dangerous to others and evincing a depraved mind regardless of human life is to be determined from the conduct itself and the circumstances of its commission." *Id.* ¶ 14, 594 N.W.2d at 333. The circuit court's instructions appropriately mirrored the definition of a depraved mind.

[¶24.]     At trial, the State presented evidence that Frias shot Crockett in the back-right side of his head, middle-back, and right palm. While the parties dispute the events starting the altercation, it is undisputed that Frias and Crockett's scuffle commenced in the apartment building, traveled down the stairs, and proceeded

---

8.     Frias relies on *Dorsey v. Florida*, 74 So. 3d 521 (Fla. Dist. Ct. App. 2011) to argue that the State failed to present evidence establishing a depraved mind. However, Florida's definition of "depraved mind" differs from the current definition contained in the criminal pattern jury instructions, which is based upon our more recent cases addressing this issue. *See* South Dakota Pattern Jury Instructions (Criminal) 3-24-13; *State v. Hart*, 1998 S.D. 93, ¶¶ 10-15, 584 N.W.2d 863, 864–66. Florida defines "depraved mind" as an act that: "(1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; (2) *is done from ill will, hatred, spite or an evil intent*; and (3) is of such a nature that the act itself indicates an indifference to human life." *Dorsey*, 74 So. 3d at 524 (emphasis added).

outside where Frias killed Crockett. Frias sustained no bullet wounds, and he failed to render aid after subduing Crockett. When law enforcement arrived at the scene, Crockett was alive and moaning.

[¶25.] Frias's acts of firing multiple shots outside an inhabited apartment complex and the locations of the wounds on Crockett's body establish his disregard for human life. Although Frias contends the single wound on Crockett's palm is evidence that Crockett was advancing, the jury reasonably could have concluded to the contrary. The two wounds on Crockett's back, viewed in a light favorable to the verdict, establish that he was retreating or, at a minimum, turned away when Frias fired the fatal shots. Further, the State presented evidence that as Crockett laid moaning on the snow-covered ground, Frias failed to render aid or call 911. Meanwhile, Frias escaped the altercation unscathed.

[¶26.] Frias also asserts that the State did not establish second-degree murder or first-degree manslaughter because it failed to show that his killing of Crockett was unjustified. He argues that he held a reasonable belief that Crockett would cause Zephier or himself great personal injury or death because Crockett drew a gun on him. Frias contends the only reasonable conclusion was that Crockett might try to kill him, which permitted him to use necessary and equal force.

[¶27.] "Homicide is justifiable if committed by any person in the lawful defense of such person . . . if there is reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such

-10-

design being accomplished." SDCL 22-16-35.[9] The parties offered conflicting testimony about the origin of the altercation. Frias testified that Crockett pulled a gun, which forced him to push the gun against Crockett's body. They struggled down the stairs and ended up outside. During the struggle, Frias yelled for Zephier, who ran outside with his RAS47 and hit Crockett. Crockett then shot Zephier and opened fire on Frias, resulting in Frias shooting Crockett.

[¶28.]    The State contended that Frias and Habben planned to rob Crockett. It presented evidence establishing that Frias texted individuals about a "lick," he attempted to purchase ammunition at Walmart, and both he and Zephier brought weapons to the drug deal. The State asserted that Frias and Crockett started to argue as they ascended the stairs. During the argument, Crockett lifted his jacket, and Frias claimed he saw Crockett pull a gun. Frias and Crockett struggled down the stairs and out the door. Meanwhile, Zephier ran down the stairs with his RAS47 yelling, "Give me the money, give me the money." Crockett then shot Zephier, and Frias shot Crockett. Frias fled the scene without rendering aid, disposed of his gun, and hid from law enforcement.

[¶29.]    The circuit court properly included multiple instructions on self-defense.[10] Further, Frias admitted that the circuit court provided his requested

---

9.    The Legislature repealed SDCL 22-16-35 with House Bill 1212. *See* 2021 S.D. Sess. Laws ch. 93, § 15. The repeal occurred after the circuit court heard this matter.

10.    The circuit court instructed the jury on justifiable homicide, the amount of force a defendant is legally permitted to use, and the circumstances when a defendant holds no duty to retreat. It also instructed the jury that the State holds the burden of negating self-defense beyond a reasonable doubt.

self-defense instructions, permitted his self-defense arguments, and did not prevent him from presenting his self-defense theory. "Whether, under the particular facts of each case, homicide was justified is for the jury to decide." *State v. Pellegrino*, 1998 S.D. 39, ¶ 18, 577 N.W.2d 590, 598. The jury reasonably could have rejected Frias's testimony on self-defense as only Habben and himself survived the incident. Based on the evidence, the jury could have concluded that Frias started the altercation or escalated the conflict and that the bullet wounds to the back of Crockett's head and back demonstrated that the shooting was not justified. *See State v. Stone*, 2019 S.D. 18, ¶ 45, 925 N.W.2d 488, 502 (defendant presented evidence that he was retreating, but it is for the jury to decide whether the killing was justified); *State v. Strozier*, 2013 S.D. 53, ¶¶ 24-27, 834 N.W.2d 857, 865 (sufficient evidence established that the defendant did not act in self-defense as the jury was properly instructed on self-defense and presented with conflicting testimony). These conclusions are reasonable, supported by the evidence, and negate Frias's self-defense theory.

[¶30.]     In viewing the evidence in a light favorable to the verdict, the jury could have found beyond a reasonable doubt that Frias unjustifiably killed Crockett. The circuit court did not err in denying Frias's motion for judgment of acquittal for second-degree murder or first-degree manslaughter.

### 2.     *Whether the circuit court erred by denying Frias's motion to arrest judgment.*

[¶31.]     We have yet to apply a standard of review to a circuit court's denial of a motion to arrest judgment based on SDCL 23A-30-1, which provides, "A court shall arrest judgment if an indictment . . . does not charge an offense or if the court

does not have jurisdiction of the offense charged." As a motion to arrest judgment is rooted in law, de novo is the appropriate standard of review. *See Sazama v. State ex rel. Muilenberg*, 2007 S.D. 17, ¶ 9, 729 N.W.2d 335, 340 (issues of jurisdiction are "reviewed by this Court de novo").

[¶32.]    Frias raises two claims in support of his argument that the circuit court erroneously denied his motion to arrest judgment. First, he points to the fact that the charge of attempted robbery was submitted to the jury for consideration even though the State failed to charge this offense in the indictment. This argument fails at the outset because it does not fall under the umbrella of claims properly addressed under SDCL 23A-30-1. Frias does not allege that the indictment upon which he was tried did not charge an offense, nor does he claim that the circuit court lacked jurisdiction to try the offenses charged in the indictment. Frias's argument regarding the circuit court's submission of the attempted robbery offense to the jury, rather than raising a constitutional or jurisdictional defect in the indictment, simply challenges the court's discretion to instruct the jury on an included offense.

[¶33.]    Moreover, Frias's legal challenge to the submission of this charge to the jury is contrary to our statutes. Because the indictment charged the offense of robbery, it presumptively included the offense of attempted robbery. *See* SDCL 23A-26-8 ("A defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit . . . the offense charged . . . ."). As this Court discussed in *State v. McCahren*, an "included offense need not be charged in an indictment, as it is already included in the offense charged." 2016 S.D. 34, ¶

-13-

7, 878 N.W.2d 586, 591 (quoting *United States v. McGeehan*, 824 F.2d 677, 679 n.2 (8th Cir. 1987)).

[¶34.] Frias's second claim is that the circuit court did not have jurisdiction to impose his sentence because the attempted robbery verdict was blank. According to Frias, because a "full determination of guilt" did not yet exist, the court could not proceed to sentencing under SDCL 23A-27-1, which requires a court to wait forty-eight hours after such a determination before imposing a sentence. This argument fares no better than the first, as it does not encompass a legitimate basis for bringing a motion to arrest judgment. Motions to arrest judgment are concerned with subject matter jurisdiction. *See Rhode Island v. Texieira*, 944 A.2d 132, 139 (R.I. 2008) (A motion to arrest judgment solely examines "subject matter jurisdiction."). The circuit court indisputably had subject matter jurisdiction under SDCL 16-6-12 to try and determine all the offenses submitted to the jury and thereafter impose a sentence.

[¶35.] Frias's second claim is instead centered upon procedural issues—whether the circuit court erroneously dismissed the jury without obtaining the parties' consent on the record under SDCL 23A-25-10, and whether it erroneously accepted an incomplete nonunanimous verdict. He claims this prematurely ended the jury's deliberations, prohibited him from having his case determined by that particular tribunal, and violated his right to due process.

[¶36.] A motion to arrest judgment under SDCL 23A-30-1 is not the appropriate vehicle for such procedural claims. *See United States v. Figueroa*, 337 F. Supp. 645, 652–53 (S.D.N.Y. 1971) (motion to arrest judgment is not the

appropriate motion to challenge the court's procedural infirmities); *State v. Comes*, 64 S.D. 537, 268 N.W. 724, 726 (1936) (motion to arrest judgment improper to dispute juror's residency); *State v. Paul*, 41 S.D. 40, 168 N.W. 739, 740 (1918) (motion to arrest judgment improper to dispute sentence); *Texieira*, 944 A.2d at 138 (motion to arrest judgment does not "permit a defendant to obtain belated review of . . . challenges that could have and should have been raised during . . . trial") (first alteration in original); *see also United States v. Sisson*, 399 U.S. 267, 280–82, 90 S. Ct. 2117, 2125, 26 L. Ed. 2d 608 (1970) (discussing the history of a motion to arrest judgment).[11]

[¶37.]     Finally, even if Frias's alleged procedural infirmities occurred, Frias fails to establish prejudice. The court ultimately acquitted Frias of attempted robbery. Therefore, he is in no worse position than if the court had not included attempted robbery on the verdict form, and he cannot claim that the absence of a verdict on the attempted robbery count affected the other counts. *See generally State v. Mulligan*, 2007 S.D. 67, ¶ 11, 736 N.W.2d 808, 814. Additionally, at the post-trial motions hearing, the court noted that it asked the parties during the bench conference if they wanted the jury to deliberate further on the counts. Both parties responded, "no." Frias then raised no objections to the jury's dismissal.

---

11.     Frias cites to *North Carolina v. Tucker*, 575 S.E.2d 770 (N.C. App. 2003) claiming a motion to arrest judgment can address other issues. North Carolina, instead of having a "motion to arrest judgment," has a "motion for appropriate relief" which provides grounds for the motion that our statute does not include. *See* N.C. Gen. Stat. Ann. § 15A-1415; N.C. Gen. Stat. Ann. § 15A-1411. The same issue arises with *Louisiana v. Foret*, 479 So. 2d 526 (La. Ct. App. 1985) as Louisiana also provides additional grounds for a motion to arrest judgment including, a non-responsive verdict. *See* La. Code Crim. Proc. Ann. art. 859.

Finally, because of his acquittal on the attempted robbery charge, Frias is not at risk of a double jeopardy violation.[12]  For all the above reasons, the circuit court correctly denied Frias's motion to arrest judgment.  We affirm.

[¶38.]        JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.

---

12.    "The double jeopardy prohibition in the Fifth Amendment to the United States Constitution, and Article VI, Section 9, of the South Dakota Constitution, 'protect[s] against . . . a second prosecution for the same offense after acquittal[.]'" *State v. Garza*, 2014 S.D. 67, ¶ 10, 854 N.W.2d 833, 837 (first alteration in original).