#30023-a-PJD
**2024 S.D. 40**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                         Plaintiff and Appellee,

v.

MICHAEL ADAM O'NEAL,                           Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CAMELA THEELER
Judge

* * * *

KATHERYN DUNN
LORANDA KENYON of
Minnehaha County Public
    Defender's Office
Sioux Falls, South Dakota                      Attorneys for defendant
                                               and appellant.


MARTY J. JACKLEY
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota                           Attorneys for plaintiff
                                               and appellee.

* * * *

ARGUED
OCTOBER 4, 2023
OPINION FILED **07/10/24**

#30023

DEVANEY, Justice

[¶1.] Michael O'Neal was charged with fifteen counts of possession of child pornography as a result of an investigation that included a warrantless seizure of his cell phone followed by a later search of the phone pursuant to a warrant. O'Neal moved to suppress the evidence obtained from his phone. The circuit court determined the seizure of the phone was unconstitutional but ultimately denied the motion to suppress the evidence obtained from the search of the phone. The circuit court also denied O'Neal's motion to dismiss the charges on grounds of preindictment delay and his motion to preclude the introduction of images on his phone corresponding to hash values that had not been identified by the State pursuant to his request for a bill of particulars. Following a jury trial, O'Neal was convicted on all fifteen counts. He appeals, challenging these and other rulings by the court. We affirm.

**Factual and Procedural Background**

[¶2.] On December 7, 2018, Christiana Guggenberger contacted the Sioux Falls Police Department and reported that she found an image of a topless 10- or 11-year-old girl on O'Neal's phone. Guggenberger, O'Neal's then-fiancé, found the image while O'Neal was sleeping. She provided law enforcement with O'Neal's phone number, the passcode to the phone, and a detailed description of the phone. She also told them that the phone would be in O'Neal's possession at his place of work. Anthony Buss, a now-former detective with the Sioux Falls Police Department responsible for investigating internet crimes against children, was

-1-

made aware of this information. He asked Officer Ryan Hansen to make contact with O'Neal and retrieve this phone.

[¶3.] Officer Hansen went to O'Neal's workplace, a Wendy's restaurant, and explained to O'Neal that the police department had received information regarding concerning photos on his cell phone. Officer Hansen described the phone he was looking for as a gold iPhone in a black and white case with a cracked screen and told O'Neal that he would be seizing this phone. O'Neal informed Officer Hansen that the phone was in the back employee area and stated that there was nothing on the phone. Officer Hansen followed O'Neal to the back of the restaurant where O'Neal retrieved the phone and handed it to Officer Hansen. Upon request, he also gave Officer Hansen its passcode. Officer Hansen then placed the phone in airplane mode, turned it off, and transported it to the Department's evidence bureau. He did not search the contents of the phone.

[¶4.] On December 11, 2018, Detective Buss obtained a warrant to search the phone. He then unlocked the phone with the passcode and found images he believed to be child pornography. Following this search, Guggenberger contacted Detective Buss and informed him that she had several items at her residence that she wanted to provide to the police. Detective Buss went to her apartment on January 2, 2019, and retrieved hard drives, SD cards, and a pillowcase containing printed pictures from her garage. Detective Buss then requested and obtained a warrant to search the contents of these items.

[¶5.] On one of the hard drives retrieved from Guggenberger's apartment, Detective Buss found additional images depicting what he believed to be child

pornography. The hard drive included separate folders named "CG" for Christiana Guggenberger and "M stuffs" for Michael O'Neal. According to Guggenberger, she gave the hard drive to O'Neal in the summer of 2016 and had not used it since. The "CG" folder mainly consisted of vacation and cat photos. "M stuffs" had another folder inside it named "re," which contained another "re" folder. Within the second "re" folder Detective Buss found alleged child pornography.

[¶6.]	O'Neal was indicted on February 13, 2020, on fifteen counts of possessing, manufacturing, or distributing child pornography in violation of SDCL 22-24A-3. Aside from the alleged dates of when the conduct occurred, each count contained identical language.[1] O'Neal filed a motion for a bill of particulars asking the State to provide "a more particularized statement of what images and the location of said images" are alleged for each count. In response, the State provided O'Neal a list of hash values identifying the images associated with each count of the indictment.[2]

---

1.	The language in each count alleged that "the Defendant . . . did commit the public offense of Possessing, Manufacturing, or Distributing Child Pornography (SDCL 22-24A-3(3)) in that the Defendant did knowingly possess, distribute, or otherwise disseminate any visual depiction of a minor engaging in a prohibited sexual act, or in the simulation of such an act[.]" Counts 1-7 were alleged to have occurred on or about December 7, 2018, and pertained to images found on O'Neal's cell phone, and counts 8-15 were alleged to have occurred on or about January 2, 2019, and pertained to images found on the hard drive.

2.	As explained by O'Neal's forensic computer expert, Daniel Meinke, a hash value is an identifying number computed by using various algorithms which is "the digital equivalent of human DNA[.]" Each image or data file has a hash value that is unique. This allows one who is examining a very large amount of data to locate the specific files at issue.

[¶7.] O'Neal filed several pretrial motions. In two separate motions, he moved to suppress any evidence obtained as a result of the December 7 seizure of his phone and the later search of his phone executed pursuant to the December 11 search warrant. He argued that the seizure violated his Fourth Amendment rights and that the warrant was issued without probable cause.[3]

[¶8.] The circuit court held a suppression hearing on these issues and after considering the evidence and arguments presented by the parties, the court took the matter under advisement.[4] The court later issued a memorandum decision denying the motions to suppress. In its written opinion, the court rejected the State's argument that O'Neal had voluntarily consented to the seizure of his phone, or in the alternative, that exigent circumstances justified a warrantless seizure. The court determined the December 7 seizure of the phone was unconstitutional but concluded that the affidavit submitted in support of the search warrant provided sufficient probable cause to sustain the warrant. The court then determined the evidence obtained via the December 11 search warrant was sufficiently attenuated from the unlawful seizure of O'Neal's phone and, therefore, declined O'Neal's request to suppress the evidence obtained during the search.

---

3. Although O'Neal's motion to suppress also included a reference to a Fifth Amendment violation, from our review of the record, he did not thereafter argue to the circuit court that any of his statements to law enforcement were procured in violation of his Fifth Amendment rights.

4. It is apparent that the parties submitted written briefs prior to the hearing, but they are not included in the record.

[¶9.]        O'Neal also moved to dismiss the charges against him, arguing his due process rights were violated by a thirteen-month delay between the time the first search warrant was issued and his indictment. The court denied this motion, concluding that O'Neal did not show actual and substantial prejudice from the delay. Finally, O'Neal moved to preclude the admission of any images that had not been identified by the hash values the State had provided in response to his request for a bill of particulars. The circuit court denied O'Neal's motion and admitted additional images offered by the State as permissible other acts evidence under SDCL 19-19-404(b) (Rule 404(b)).

[¶10.]       During trial, the State called Guggenberger, Officer Hansen, and Detective Buss as witnesses in its case-in-chief. At the conclusion of the State's evidence, O'Neal moved for a judgment of acquittal, contending that the State had not presented a prima facie case to support the charges. He argued that the State did not present evidence to prove he was the person who viewed or created the images. He also argued that some of the photos did not meet the definition of what constitutes child pornography. The circuit court denied the motion. O'Neal then called his forensic computer expert, Daniel Meinke, as his sole witness. Meinke described his review of the data extracted from O'Neal's phone and the hard drive and explained the meaning of the creation, modification, and access dates associated with each file. According to Meinke, these dates may not be significant for various reasons pertaining to how the devices' operating systems store data. He also testified that the alleged images on the phone were downloaded at the same

time and that he could not determine whether the alleged files on the hard drive had been opened or by whom.

[¶11.]     After considering all the evidence admitted, the jury found O'Neal guilty on all fifteen counts. The circuit court sentenced O'Neal on each count to ten years in the penitentiary with six years suspended and ordered the sentences to run concurrently.

[¶12.]     O'Neal raises several issues on appeal which we restate as follows:

> 1.     Whether the circuit court erred by denying O'Neal's motions to suppress.
>
> 2.     Whether the circuit court erred when it denied O'Neal's motion to dismiss.
>
> 3.     Whether the circuit court abused its discretion when it admitted images corresponding to hash values that had not been previously identified by the State.
>
> 4.     Whether the evidence was sufficient to sustain the jury's verdict.
>
> 5.     Whether the indictment was duplicitous and violated O'Neal's right to jury unanimity.

### Analysis

### *1.     Whether the circuit court erred by denying O'Neal's motions to suppress.*

[¶13.]     O'Neal contends the circuit court erred in denying his motion to suppress evidence obtained as a result of the warrantless seizure of his cell phone on December 7. He asserts that the court erred in applying the attenuation doctrine as an exception to the exclusionary rule after concluding that law enforcement had unlawfully seized his phone. He also maintains that the December 11 search warrant issued after the phone was seized was not supported

by probable cause. We first examine the question whether this warrant was supported by probable cause because the question whether an exception to the exclusionary rule applies in this case hinges on the validity of the December 11 search warrant.

### *Probable Cause*

[¶14.] O'Neal argues the affidavit submitted in support of the December 11 search warrant lacked sufficient probable cause because Guggenberger was not previously known to be an informant with a history of providing reliable information; law enforcement failed to corroborate any of the alleged criminal activity; and the information provided was "not indicative of illegal child pornography."

[¶15.] "We review the issuing court's probable cause determination independently of any conclusion reached by the judge in the suppression hearing." *State v. Ostby*, 2020 S.D. 61, ¶ 13, 951 N.W.2d 294, 298 (citation omitted). However, "[o]ur review of the probable cause determination of the issuing magistrate judge is deferential. 'Reviewing courts are not empowered to conduct an after-the-fact de novo probable cause determination; on the contrary, the issuing judge's legal basis for granting the warrant is examined with "great deference."'" *Id.* "On review, we are limited to an examination of the facts as contained within the four corners of the affidavit." *Id.*

[¶16.] "In determining whether probable cause exists to support the issuance of a search warrant, '[t]here must be "a showing of probability of criminal activity."'" *Id.* ¶ 14, 951 N.W.2d at 299 (alteration in original). We have further noted that

probable cause "is a fluid concept—turning on the assessment of probabilities in particular contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* ¶ 15. We therefore consider "the totality of the circumstances to decide if there was at least a 'substantial basis' for the issuing judge's finding of probable cause." *Id.*

[¶17.] The affidavit submitted in support of the search warrant included the following factual information:[5]

> 1. On 12/7/2018 at approximately 15:59 hours, Christina[6] Guggenberger . . . made contact with Metro Communications wishing to report what she believed to be child pornography. The child pornography was on a phone belonging to her fiancé Michael A. O'Neal . . . .
>
> 2. Officer E. Bertram made phone contact with Christina a short time later and learned that prior to calling for police, Christina had looked at Michael's phone while he was sleeping. Christina told Officer Bertram that she was able to see an image of a female that she believed to be approximately 10 or 11 years of age with her breasts exposed. Christina believed the female to be 10 or 11 years of age due to the size of her breasts and young looking face. When the image was viewed, the phone was at [her residence] in Minnehaha County.
>
> 3. Christina explained to Officer Bertram that the photo was located on an iPhone that was gold in color with a cracked front screen and was in a black and white protective case. Christina also gave a Verizon number of 605-218-1887

---

5. The affidavit submitted in support of the search warrant was not admitted into evidence at the hearing on the motions to suppress. However, the circuit court's memorandum decision relates the contents of the affidavit verbatim and contains a footnote identifying a search warrant file number 49SWA 19-3 as its source. Had the circuit court elected not to include this information we may have been unable to review the issue.

6. During Guggenberger's trial testimony, she identified the correct spelling of her first name as "Christiana."

that was assigned to the phone and a passcode of 011496 to unlock the phone. The phone was currently in possession of Michael at his place of work.

4. Officer R Hansen was later dispatched to Wendy's located at 400 S. Lyons Ave to meet with Michael. Upon arriving at that location Officer R. Hansen did come into contact with Michael and the iPhone that was described to Officer E Bertram.

5. Officer R Hansen spoke with Michael who also gave the passcode of 011496 to be used to unlock the phone.

6. Officer R Hansen placed the phone into airplane mode and entered [it] into evidence storage at the Law Enforcement Center located at 320 W 4th St Sioux Falls, SD 57104 in Minnehaha County.

7. Your Affiant knows through training and experience that digital media such as images and videos are easily stored, back[ed] up to, and transported on devices such as cell phones.

8. Your Affiant is requesting a warrant to search the defendants' iPhone that is gold in color and in a black and white case.

[¶18.] This Court has focused on two inquiries when making a probable cause determination involving an informant's tip: (1) whether there was "an 'explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand,'" which "entitles [the informant's] tip to greater weight"; and (2) "the extent to which the tip is corroborated by the officer's own investigation[.]" *Ostby*, 2020 S.D. 61, ¶ 16, 951 N.W.2d at 299 (first alteration in original) (quoting *State v. Tenold*, 2019 S.D. 66, ¶ 34, 937 N.W.2d 6, 16). However, we have further observed that "[a]n informant 'whose identity is known, who personally observes the alleged criminal activity, and who openly risks liability by accusing another person of criminal activity [ ] may not need further law

enforcement corroboration.'" *State v. Rosa*, 2022 S.D. 76, ¶ 20, 983 N.W.2d 562, 568 (second alteration in original) (citation omitted). Here, not only was Guggenberger's statement a detailed account of what she observed firsthand, entitling the information to greater weight, but her identity was known to law enforcement. These circumstances negate the need for further corroboration.

[¶19.] Although O'Neal acknowledges that an informant's tip may be enough to establish probable cause, he emphasizes the fact that Guggenberger was not known to have a history of providing reliable information and asserts that without such history, independent corroboration is needed. He then compares this case to *State v. Sweedland*, 2006 S.D. 77, ¶ 24, 721 N.W.2d 409, 415, in which the Court determined that there was insufficient probable cause from an informant's tip when law enforcement only corroborated "innocuous facts[,]" such as a license plate number and direction of travel, rather than facts directly related to the alleged marijuana use by the occupants in a hotel room. However, the circumstances here are readily distinguishable from those at issue in *Sweedland*. In *Sweedland*, the informant did not personally observe the alleged wrongdoing, i.e., the possession of unlawful drugs, and thus did not "give an explicit and detailed account of the event." 2006 S.D. 77, ¶ 23, 721 N.W.2d at 415. But here, Guggenberger personally saw the indecent image on O'Neal's phone and related her observation to law enforcement in an explicit and detailed statement. Detective Buss was therefore justified in relying on Guggenberger's information to secure a search warrant.

[¶20.] As to O'Neal's claim that Guggenberger's description of the photo she found on his phone was insufficient to establish probable cause, he relies on the

language in SDCL 22-24A-3 and argues that "there was no allegation that the girl was engaged in a prohibited sexual act or that she was simulating such an act in the photo as required by" this statute. He then asserts that a picture of "a naked child is not necessarily child pornography." While this may be true, O'Neal misapplies this Court's standard for determining probable cause for a search warrant. The party seeking the warrant does not have to satisfy each element of the crime beyond a reasonable doubt to secure a warrant; only a *probability* of criminal activity must be shown.

[¶21.] The statutory definition of a "prohibited sexual act" in SDCL 22-24A-2(17) includes the "actual or simulated exhibition of the genitals, the pubic or rectal area, or the bare feminine breasts, in a lewd or lascivious manner[.]" The affidavit contains Guggenberger's description of the image she found on O'Neal's phone of a female "approximately 10 or 11 years of age with her breasts exposed." Given the broad nature of the statutory definition of a prohibited sexual act, along with the fact Guggenberger was disturbed enough about the photo to report it to law enforcement, there was a reasonable probability that O'Neal's phone contained child pornography. We therefore conclude the December 11 search warrant was sufficiently supported by probable cause.

*Exceptions to the Exclusionary Rule*

[¶22.] The circuit court determined that law enforcement unlawfully seized O'Neal's phone and the State did not appeal this determination. "Evidence obtained because of an unlawful seizure ordinarily must be suppressed under the exclusionary rule." *Tenold*, 2019 S.D. 66, ¶ 23, 937 N.W.2d at 13 (citation omitted).

"[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality of 'fruit of the poisonous tree.'" *Id.* (alteration in original) (quoting *State v. Heney*, 2013 S.D. 77, ¶ 9, 839 N.W.2d 558, 562). "However, 'the progenitor of the "fruit of the poisonous tree" doctrine'—*Wong Sun*— 'recognized that original lawless conduct would not taint all evidence forever.'" *Id.* (quoting *Satter v. Solem*, 458 N.W.2d 762, 768 (S.D. 1990)). As noted in *Utah v. Strieff*, there are "significant costs" in applying the exclusionary rule; therefore, it is "applicable only . . . where its deterrence benefits outweigh its substantial social costs." 579 U.S. 232, 237, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016) (omission in original) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S. Ct. 2159, 2163, 165 L. Ed. 2d 56 (2006)).

[¶23.]     Because "[s]uppression of evidence" is the "last resort," rather than "first impulse," the United States Supreme Court has recognized exceptions to the exclusionary rule, three of which "involve the causal relationship between the unconstitutional act and the discovery of evidence." *Id.* at 237–38, 136 S. Ct. at 2061. Those three exceptions include: the independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine. *Id.* at 238. This Court has likewise recognized these three related exceptions to the fruit of the poisonous tree doctrine. *See e.g.*, *Heney*, 2013 S.D. 77, ¶ 15, 839 N.W.2d at 563 (independent source doctrine); *State v. Smith*, 2014 S.D. 50, ¶ 25, 851 N.W.2d 719, 726 (inevitable discovery doctrine); *State v. Mousseaux*, 2020 S.D. 35, ¶ 14, 945 N.W.2d 548, 552 (attenuation doctrine).

[¶24.] The circuit court acknowledged all three exceptions to the exclusionary rule and noted the State's argument that the inevitable discovery doctrine applies under the circumstances. However, the court determined the evidence was insufficient to apply either the inevitable discovery doctrine or the related independent source doctrine and, sua sponte, concluded instead that under *Mousseaux* and *Strieff*, the attenuation doctrine applied under the circumstances here. The court then weighed the three factors adopted in *Mousseaux*, finding that (1) the time elapse of four days between the unlawful seizure and lawful search warrant "weighs slightly against suppression"; (2) the lack of an intervening circumstance like the preexisting arrest warrants in *Mousseaux* and *Strieff* "weighs in favor of suppression"; and (3) the officer's purpose and conduct weighs against suppression because it was not clear that the officer knew his conduct was likely unconstitutional and "[t]he phone was not seized simply on the hope that something might turn up."[7] Ultimately, the court determined that in light of the totality of the factors, "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence" later obtained by

---

7. The three factors adopted in *State v. Mousseaux*: (1) "look to the temporal proximity between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search"; (2) "consider the presence of intervening circumstances"; and particularly significant, (3) "examine the purpose and flagrancy of the official misconduct." 2020 S.D. 35, ¶ 17, 945 N.W.2d 548, 553 (quoting *Utah v. Strieff*, 579 U.S. 232, 239, 136 S. Ct. 2056, 2062, 195 L. Ed. 2d 400 (2016)).

O'Neal's phone via a valid search warrant.[8] *See Mousseaux,* 2020 S.D. 35, ¶ 27, 945 N.W.2d at 553 (citation and alteration omitted).

[¶25.]     The circuit court's determination that there was no intervening circumstance was incorrect. Neither *Mousseaux* nor *Strieff* stands for the proposition that for a warrant to be an intervening circumstance it must have been issued prior to the unlawful conduct. Other courts have determined that warrants issued after unlawful conduct may act as intervening circumstances. *See United States v. Green,* 2019 WL 2085434 *3 (W.D. Minn. May 13, 2019) (concluding that a search warrant supported by sufficient lawfully obtained evidence issued after an illegal search was an intervening circumstance); *United States v. Hastings,* 2011 WL 2412829 *9 (D. Minn. May 23, 2011) (determining that subsequent "search

---

8.     On appeal, O'Neal's argument against attenuation rests on the third factor. In particular, he asserts the circuit court erred in determining that his "phone was not seized simply on the hope that something might turn up." While we decline to apply the attenuation doctrine under the circumstances, we conclude that the circuit court did not clearly err in its findings related to the third factor. *See State v. Boll,* 2002 S.D. 114, ¶ 14, 651 N.W.2d 710, 715 (reviewing the court's "findings of fact under the clearly erroneous standard"). The court noted the lack of evidence that O'Neal was aware that his fiancé had contacted law enforcement; however, because the seizure here pertained to evidence that can be easily destroyed the circumstances support the conclusion that the officer's conduct was less flagrant. *See Mousseaux,* 2020 S.D. 35, ¶ 26, 945 N.W.2d at 555 (stating that "[f]or the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure" (quoting *Strieff,* 579 U.S. at 241, 136 S. Ct. at 2063)). Further, although the seizure of the phone was undoubtedly for investigatory purposes, the record supports the court's finding that the phone was not seized merely in the hope "that something might turn up." Guggenberger had already given law enforcement a credible tip that detailed precisely what the image was and where it was located. Therefore, under the circumstances, Officer Hansen's conduct was "at most negligent," rather than flagrant. *Strieff,* 579 U.S. at 241, 136 S. Ct. at 2063; *Mousseaux,* 2020 S.D. 35, ¶ 26, 945 N.W.2d at 555.

warrants constitute intervening circumstances" when the affidavits submitted in support "did not include evidence obtained as a result of [d]efendant's illegal detention").

[¶26.] There is, however, a pertinent distinction between the circumstances at issue in this case and those at issue in *Mousseux* and *Strieff* that illustrates why the scenario here is more appropriately analyzed by applying the other exceptions to the exclusionary rule rather than the attenuation doctrine. Both *Mousseux* and *Strieff* involved the existence of an *unrelated* arrest warrant that existed prior to the unlawful stop, which authorized law enforcement to conduct a search incident to arrest and *lawfully seize* evidence. Here, in contrast, the *unlawful conduct* was the warrantless *seizure* of the phone containing the evidence at issue, and the later search could not have been conducted without law enforcement having lawful *possession* of the phone. Thus, the initial question is whether O'Neal's phone would have inevitably been *seized* in a lawful manner, followed by the question whether the ultimate *search* of the phone was lawful. To answer that question, the more straightforward course is to apply the independent source and related inevitable discovery doctrines to the evidence in the record. *See State v. Boll*, 2002 S.D. 114, ¶ 14, 651 N.W.2d 710, 715 (providing that although we review the circuit court's findings of fact for clear error, "[o]nce the facts have been determined, [ ]the application of a legal standard to those facts is a question of law reviewed de novo").

[¶27.] This Court has explained that the inevitable discovery doctrine "applies where evidence may have been seized illegally but where an alternative legal means of discovery . . . *would inevitably have led* to the same result." *Smith*,

2014 S.D. 50, ¶ 25, 851 N.W.2d at 726 (omission in original).  The independent source doctrine, on the other hand, "applies if the evidence both would have been acquired by lawful means had the unlawful search not occurred and in fact *was* acquired (or reacquired) by these lawful means."  *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020).  As noted in *Boll*, "[t]he inevitable discovery doctrine . . . is in reality an extrapolation from the independent source doctrine: *Since* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered."  2002 S.D. 114, ¶ 20, 651 N.W.2d at 716 (omission in original) (quoting *Murray v. United States*, 487 U.S. 533, 539, 108 S. Ct. 2529, 2534, 101 L. Ed. 2d 472 (1988)).  However, courts grappling with the various scenarios in which either or both of these doctrines may apply have concluded that "the distinction between the independent-source and inevitable-discovery doctrines is not sharp[.]"  *Baez*, 983 F.3d at 1037 (applying both doctrines to the facts of the case and noting that "where exactly one draws the line between the two doctrines is unimportant").[9]

---

9.      In asserting that only the independent source doctrine need be applied here, the specially concurring opinion focuses on a particular quote in *Murray v. United States* wherein the court hypothetically compared the prospect of a "reseizure" of evidence already seized to the "rediscovery" of evidence already discovered.  487 U.S. 533, 542, 108 S. Ct. 2529, 2535, 101 L. Ed. 2d 472 (1988).  This was part of a larger discussion regarding the general policies weighing against the application of the exclusionary rule, namely, that "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied."  *Id.*  However, *Murray* was not a case involving an initial unlawful seizure and a later "reseizure" of evidence, but rather one in which evidence was discovered during an unlawful entry of a warehouse but not seized until law enforcement obtained a warrant to lawfully search the property.  *Id.* at 535,

(continued . . .)

[¶28.] In regard to the application of these two doctrines here, the decision in *United States v. Lazzaro* is instructive because it involves circumstances similar to those at issue in this appeal. 637 F. Supp. 3d 640 (D. Minn. 2022). In *Lazzaro*, law enforcement went to the defendant's apartment to arrest him pursuant to a warrant. *Id.* at 643. When the defendant opened the door, he was holding his phone and then put it in his pocket. *Id.* After taking him into custody, the arresting agents realized that his phone was no longer on his person. *Id.* In response to a request from the case agent, another agent unlawfully entered the defendant's apartment and retrieved the phone, which he believed would contain "fruits of the crime." *Id.* After seizing the phone, he did not open it or otherwise attempt to obtain information from it. Four days later, a warrant was issued to search the phone. *Id.*

[¶29.] The defendant moved to suppress any evidence that may be obtained from the phone, arguing that the warrantless search of his apartment and seizure of the phone violated his Fourth Amendment rights. *Id.* at 644. He further claimed that the warrant issued to search his phone did not validate the unlawful search of his apartment. *Id.* The government argued that the independent source doctrine precludes suppression because law enforcement obtained a valid warrant prior to searching the phone. *Id.* at 644–45.

[¶30.] The court, however, determined that the phone in the apartment was akin to a bag in an apartment containing evidence and noted that "a warrant

---

(. . . continued)
108 S. Ct. at 2532. Thus, the only issue before the Court was whether the independent source doctrine could be applied to the facts of the case.

authorizing the search of a container does not give officers authority to search for the container in any location they choose." *Id.* at 645. Therefore, the court examined "whether the agents would have obtained a valid warrant to search Lazzaro's apartment and seize the phone." *Id.* In determining that "any evidence obtained from the phone is admissible under the independent-source doctrine (or, alternatively, the inevitable-discovery doctrine)," the court made several observations. *Id.* at 646. The court noted that there was "probable cause to believe that the phone contained evidence of and was used to commit crimes"; "the warrant to search the phone was supported by probable cause even setting aside any information that . . . may have been obtained through the illegal search"; law enforcement "did not obtain any information from the illegal search"; and law enforcement "only obtained physical custody of the phone, which they already knew was in the apartment." *Id.* at 645–46.

[¶31.] When considering the circumstances here, there are two hypothetical scenarios that would have inevitably led to a lawful seizure of the phone. *See Boll*, 2002 S.D. 114, ¶ 21, 651 N.W.2d at 716 (noting that the inevitable discovery is hypothetical in nature and does not apply if the alternative legitimate source is actually used to seize the evidence).[10] As to the first, there was nothing unlawful

___

10. Although the specially concurring opinion relies on *Boll* to conclude that the inevitable discovery doctrine does not apply to the case at hand, *Boll* does not refer to an alternative source of "investigation," but rather an "alternative legal means" for the *seizure* of the evidence that "has been realized[.]" 2002 S.D. 114, ¶ 21, 651 N.W.2d at 716–17. In *Boll*, because the alternative legal means had been realized, i.e., a search warrant that had been executed to *seize* the evidence at issue, the inevitable discovery doctrine did not apply. Here, in contrast, O'Neal's phone was *seized* unlawfully, and the "alternative

(continued . . .)

about Officer Hansen going to O'Neal's workplace and engaging in a conversation about the phone he was looking for and the reasons why. If, during this visit, O'Neal had refused to turn over his phone, there would likely have been grounds, at that point, to seize the phone without a warrant based on exigent circumstances.[11] Once O'Neal was put on notice that he was being investigated for the possession of child pornography, he would certainly have the incentive to either conceal or destroy the phone or its incriminating contents, something that Meinke agreed was easy to do.

[¶32.]     In the alternative, if law enforcement had not perceived the existence of exigent circumstances and instead opted to seek a warrant to seize and search the phone before making any contact with O'Neal, the record supports a conclusion

_____

(. . . continued)

legal means" discussed above by which it could have been seized were hypothetical as neither had been realized at the time of the seizure. Thus, this case is unlike the scenario in *Boll* or in other cases wherein evidence is seen or discovered via an unlawful entry but not *seized* until a lawful search warrant was later acquired.

11.    There is a considerable body of case law in which seizures of cell phones or electronic devices in the absence of a warrant have been condoned. *See, e.g.*, *Riley v. California*, 573 U.S. 373, 391, 134 S. Ct. 2473, 2487, 189 L. Ed. 2d 430 (2014) (noting that officers "may be able to rely on exigent circumstances to search the phone immediately" if there are "specific concerns about the potential loss of evidence in a particular case"); *United States v. Mays*, 993 F.3d 607, 616 (8th Cir. 2021) (finding that "exigent circumstances exist when, if the property is not seized immediately, there is a risk that the evidence contained therein would be lost"); *United States v. Sherman*, 2023 WL 2860632 *5 (D. Minn. April 10, 2023) (determining "[t]he Eighth Circuit has repeatedly found the risk that evidence of child-pornography offenses would be removed or destroyed from electronic devices presented exigent circumstances justifying the immediate seizure of those devices") (citing *Mays*, 993 F.3d at 616); *United States v. Clutter*, 674 F.3d 980, 983, 985 (8th Cir. 2012); *United States v. Stephen*, 984 F.3d 625, 631 (8th Cir. 2021), *reh'g denied* (Feb. 5, 2021), *cert. denied*, 142 S. Ct. 270, 211 L. Ed. 2d 125 (2021)).

that it is "more likely than not" that the phone would have inevitably been seized lawfully given the contents of the affidavit presented here. *See Guthrie v. Weber*, 2009 S.D. 42, ¶ 24, 767 N.W.2d 539, 547 (citation omitted). In a slightly different context, the court in *Baez* explained the relevant inquiry as follows: "To determine whether evidence within the scope of a valid warrant would have been acquired had a prior unlawful search not occurred, we ask whether (1) law enforcement 'would have sought a warrant even if the [unlawful] search had not occurred,' and (2) 'the warrant was supported by probable cause even without information gained from the [unlawful] search.'" 983 F.3d at 1037 (alterations in original) (citation omitted).

[¶33.] As to the first inquiry, given the information already received from Guggenberger, absent any perceived exigent circumstances, we can reasonably infer that law enforcement would have sought a warrant for both the seizure and search of the phone. *See Guthrie*, 2009 S.D. 42, ¶ 26, 767 N.W.2d at 548 (upholding the application of the inevitable discovery doctrine after determining it was logical to conclude that law enforcement would have obtained a search warrant to seize evidence given that they had an independent source that would have supported the warrant). So too here, the affidavit submitted in support of the December 11 warrant would have provided sufficient probable cause to seize O'Neal's phone. In addition to Guggenberger's description of the phone and the concerning photo it contained, she advised law enforcement, as noted in the affidavit, that "[t]he phone was currently in possession of [O'Neal] at his place of work." Further, it is apparent from the record that law enforcement knew that O'Neal worked at Wendy's.

[¶34.] As to the second inquiry, Officer Hansen did not ask O'Neal to show him anything on the phone and he did not search the phone himself. Officer Hansen only secured the phone that O'Neal produced and transported it to the evidence bureau. Further, the information in the affidavit providing probable cause to believe the phone contained child pornography came from Guggenberger and was provided to law enforcement prior to them having any contact with O'Neal. And as noted in the affidavit, she provided a detailed description of the phone, including its number, colors of the phone and phone case, and a description of a crack on the screen. She also provided the passcode to the phone. Thus, this same information included in the affidavit submitted in support of a warrant to *search* the phone would have likewise provided probable cause to *seize* the phone. It is therefore apparent that even without the interaction between Officer Hansen and O'Neal, this phone would have inevitably been seized and searched pursuant to a lawful search warrant. For these reasons, we affirm the denial of O'Neal's motions to suppress.

### 2. Whether the circuit court erred when it denied O'Neal's motion to dismiss.

[¶35.] O'Neal claims his constitutional rights to due process and a fair trial guaranteed under the Fifth and Fourteenth Amendments were violated by the thirteen-month delay between the issuance of the search warrant for his cell phone and his indictment. We review "[a]n alleged violation of a defendant's constitutional right to due process" under a de novo standard. *State v. Krouse*, 2022 S.D. 54, ¶ 47, 980 N.W.2d 237, 251.

[¶36.]     The "Due Process Clause has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789, 97 S. Ct. 2044, 2048, 52 L. Ed. 2d 752 (1977). The "statutes of limitations . . . provide 'the primary guarantee, against bringing overly stale criminal charges.'" *Id.* However, "the 'statute of limitations does not fully define (defendants') rights with respect to the events occurring prior to indictment[.]'" *Id.* (parens in original).

[¶37.]     Dismissal of an indictment is warranted when there is a showing "that the preindictment delay . . . caused substantial prejudice to [a defendants'] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324, 92 S. Ct. 455, 465, 30 L. Ed. 2d 468 (1971); *see also State v. Stock*, 361 N.W.2d 280, 282 (S.D. 1985) (adopting the test from *Marion*). "A defendant bears the burden of proving actual and substantial prejudice attributable to pre-indictment delay." *United States v. Brockman*, 183 F.3d 891, 895 (8th Cir. 1999). "[T]he burden of establishing justification for [preindictment] delay rests squarely upon the state." *Stock*, 361 N.W.2d at 284. As this Court has pointed out, "*Marion* clearly stands for the proposition that 'proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.'" *Id.* at 283.

[¶38.]     O'Neal argues on appeal, as he did below, that he "lost the ability to review crucial evidence leading up to trial." In particular, he claims he was prejudiced by the fact that any recording of Guggenberger's phone call with Officer Bertram in which she reported the photo she found on his phone and the recording

of Officer Hansen's interaction with O'Neal had "fallen off the server" as a result of the delay. O'Neal thus claims that he "was denied the opportunity to review potentially exculpatory evidence related to the seizure of his cellphone." He further claims that he could not properly prepare a cross-examination of Guggenberger or evaluate the legal issues.

[¶39.]        However, the possibility that exculpatory evidence might have been lost is not sufficient to establish actual and substantial prejudice. First, it is not clear from the record below that recordings of the officers' interactions with Guggenberger and O'Neal previously existed.[12] If the recordings did exist, whether they would have contained exculpatory evidence is purely speculative. Second, O'Neal seems to miss the obvious point that despite the lack of a recording, Officer Hansen's testimony was viewed by the circuit court as evidence supporting O'Neal's claim that the seizure of his phone was unlawful. O'Neal also relied on the testimony from Officer Hansen at trial that he was cooperative and had nothing to hide when arguing to the jury that he did not knowingly possess child pornography. Thus, the absence of a recording did not deprive O'Neal of his ability to present his defense. Third, O'Neal does not claim that any witnesses were lost as a result of

---

12.    Officer Hansen was not wearing a body camera during his interaction with O'Neal, but he was wearing a microphone. He testified that the microphone could have recorded the conversation, but there was no evidence that the conversation had for certain been recorded. Additionally, O'Neal admitted to the circuit court that he did not have any evidence indicating that the call between Guggenberger and Officer Bertram had actually been recorded, and the State advised the court it was not aware of such a recording. However, the State did acknowledge that if there had been any recording of this call, it would no longer be on the server.

the delay, and he was able to cross-examine both Officer Hansen and Guggenberger.

[¶40.]    Given O'Neal's failure to show actual and substantial prejudice resulting from the delay, it is unnecessary to consider the State's reasons for the delay. *See United States v. Bartlett*, 794 F.2d 1285, 1293 (8th Cir. 1986) (holding that since the defendant failed to prove substantial and actual prejudice "it [is] unnecessary for [the court] to determine whether the government delay was 'an intentional device to gain tactical advantage over the accused'"). Even if we did consider this factor, O'Neal has not pointed to any evidence in the record that suggests the State delayed the indictment to gain some tactical advantage. When asked by the circuit court at oral argument to identify the reasons for the preindictment delay, the State referred to testimony from Meinke regarding the volume of the images extracted from O'Neal's phone and hard drive that needed to be examined.[13] Notably, in O'Neal's argument to the court on his motion to exclude additional images, he also referred to the large volume of evidence and the time required to properly examine it. Based on the record before the circuit court, there was no error in denying O'Neal's motion to dismiss.

### 3.    *Whether the circuit court abused its discretion when it admitted images corresponding to hash values that had not been previously identified by the State.*

[¶41.]    O'Neal contends the circuit court improperly allowed the State to admit images corresponding to hash values that had not been previously identified

---

13.    Meinke testified that O'Neal's phone contained around 386,000 images, 56,278 of which were pictures on the phone's camera roll. Additionally, Meinke testified there were approximately 870,000 pictures on the hard drive that contained the alleged child pornography.

in the State's response to his request for a bill of particulars. On the day prior to trial, the State provided defense counsel with additional hash values for the images it intended to offer at trial. Upon receiving this information, O'Neal filed a motion to preclude the admission of the images associated with these hash values. He claimed that the admission of these images would violate his right to due process and to a fair trial because he had been building his defense solely on the previously provided hash values. He argued that his expert would not have sufficient time to locate and examine these images to assist in the cross-examination of witness testimony related to this evidence or to prepare a rebuttal.

[¶42.]    In response, the State explained that the hash values identified for counts 1, 3, 4, 5, 6, and 7 in response to O'Neal's request for a bill of particulars were associated with thumbnail images. To demonstrate that O'Neal had clicked on each thumbnail and viewed a larger image of the photo depicted therein, the State sought to admit, as additional exhibits, these larger images found on the phone's camera roll. The State argued that this was *res gestae* evidence because it related directly to whether the specific images identified for each count were knowingly possessed by O'Neal, an element the State needed to prove to convict him on these charges. The State further noted that this evidence was particularly relevant if O'Neal was going to claim, as a defense, that he did not knowingly possess these images. As to O'Neal's due process concerns, the State explained that these larger images were included in the data provided to the defense expert long before trial. The State asserted that the decision by the defense to focus only on the hash values

identified in response to O'Neal's request for a bill of particulars should not preclude the admission of other relevant information contained on his phone.

[¶43.]       In denying O'Neal's motion, the circuit court advised that it was treating the evidence as other acts under Rule 404(b).  The court determined that because the images were offered to show "O'Neal had clicked on the thumbnail that then popped up this image," they were relevant to show he had knowledge of the images, the intent to look at them, and that they did not accidentally end up on his phone.

[¶44.]       "We review a circuit court's decision to admit other act evidence for an abuse of discretion." *State v. Evans*, 2021 S.D. 12, ¶ 25, 956 N.W.2d 68, 79.  "An abuse of discretion 'is a fundamental error of judgement, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable.'" *State v. Birdshead*, 2015 S.D. 77, ¶ 51, 871 N.W.2d 62, 79.

[¶45.]       Given the nature of the evidence at issue, the circuit court could have foregone a Rule 404(b) analysis and admitted these images as either *direct* evidence of the charged crimes, or at the very least, *res gestae*.  They were simply larger versions of the same thumbnail images identified in response to O'Neal's bill of particulars offered to prove that O'Neal had accessed and maintained control over them.  "'*Res gestae*,' also known as intrinsic evidence, is evidence of wrongful conduct other than the charged criminal conduct offered for the purpose of providing the context in which the charged crime occurred." *State v. Otobhiale*, 2022 S.D. 35, ¶ 16, 976 N.W.2d 759, 767 (quoting 29A Am. Jur. 2d *Evidence* § 858 (2022)).  To the extent the larger images of these photos could be construed as

something other than direct evidence, they are certainly intrinsically relevant to the charged conduct. This Court has stated that "res gestae, as applied to a crime, includes the *complete criminal transaction* from its beginning or starting point in the act of [the] accused until the end is reached." *State v. Jones*, 2002 S.D. 153, ¶ 15, 654 N.W.2d 817, 820 (emphasis added) (citation omitted). Simply put, *res gestae* evidence "completes the story." *United States v. Reed*, 978 F.3d 538, 543 (8th Cir. 2020). The larger images offered by the State complete the story.

[¶46.] With respect to O'Neal's due process argument regarding the timing of the State's disclosure, it is also apparent that the circuit court properly considered whether O'Neal would be unfairly prejudiced if these larger images were admitted. The court noted that O'Neal's expert, Meinke, was provided all the data that had been extracted from the phone long before the trial started. Also, in response to questions from the court, Meinke testified that on the morning before the start of trial, he was able to verify these newly identified hash values and export the data related to these images in forty-five minutes. Given these circumstances, the circuit court did not abuse its discretion by admitting this evidence.

### 4. *Whether the evidence was sufficient to sustain the jury's verdict.*

[¶47.] At the close of the State's evidence O'Neal moved for a judgment of acquittal. The circuit court denied O'Neal's motion and O'Neal now argues the court erred by doing so. "[A] motion for judgment of acquittal attacks the sufficiency of the evidence, which is a question of law whether the motion is considered before or after the jury's verdict." *Krouse*, 2022 S.D. 54, ¶ 34, 980 N.W.2d at 247 (alteration in original) (quoting *State v. Wolf*, 2020 S.D. 15, ¶ 12, 941

N.W.2d 216, 220). "In measuring the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Frias*, 2021 S.D. 26, ¶ 21, 959 N.W.2d 62, 68 (quoting *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83). "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *State v. Smith*, 2023 S.D. 32, ¶ 45, 993 N.W.2d 576, 591 (citation omitted). "[W]e will not resolve conflicts in the evidence, assess the credibility of witnesses, or evaluate the weight of the evidence." *Id.* (alteration in original) (citation omitted).

[¶48.]     O'Neal argues "there was insufficient evidence that [he] would have been the one to have viewed or created these images on either the cellphone or hard drive devices." He notes that the evidence showed that Guggenberger also had access to both the hard drive and his cell phone and provided the correct passcode for the phone to law enforcement.

[¶49.]     "To prove the crime possessing, distributing, or otherwise disseminating child pornography under SDCL 22-24A-3(3), the State needed to establish that [the defendant] '[k]nowingly possesse[d], distribute[d], or otherwise disseminate[d] any visual depiction of a minor engaging in a prohibited sexual act, or in the simulation of such an act.'" *State v. Linson*, 2017 S.D. 31, ¶ 6, 896 N.W.2d 656, 659 (first alteration added, rest in original) (citation omitted). "Although *possession* is not statutorily defined, this Court (in a possession of marijuana case) has stated that it 'signifies dominion or right of control over [contraband] with

knowledge of its presence and character.'" *Id.* (parens and alteration in original) (citation omitted). Importantly, "possession can either be actual or constructive and *need not be exclusive*[,]" and it "may be proven by circumstantial evidence." *Id.* (emphasis added) (citation omitted).

[¶50.]     A review of the record reveals that a rational trier of fact could have found the element of knowing possession beyond a reasonable doubt. Detective Buss testified as to when these images on the phone were downloaded and at what location the download took place. For instance, one of the images was downloaded at a location matching the Bishop Dudley House at a time when O'Neal was a resident at the shelter and Guggenberger testified that she had never been at this facility. As to the images on the hard drive, Guggenberger testified that she gave the hard drive to O'Neal in 2016, and while Detective Buss was not able to identify where and when the images on the hard drive were downloaded, he testified that the types of images found in the folder containing the alleged child pornography were consistent with the types of images found on O'Neal's cell phone. In contrast, the images found in the "CG" folder used by Guggenberger were primarily of vacations and cats.

[¶51.]     Although Guggenberger had access to these devices, this Court has said possession does not have to be exclusive, and the jury instruction defining the term "knowingly" contained this rule. Finally, the jury heard testimony from Guggenberger that she did not download the images onto O'Neal's phone or access O'Neal's folders on the hard drive. It was up to the jury to weigh the evidence and make credibility determinations. Based on this record, there was sufficient

evidence for a rational trier of fact to find the essential elements of the crime charged.

### 5. *Whether the indictment was duplicitous and violated O'Neal's right to jury unanimity.*

[¶52.] O'Neal contends that his due process right to jury unanimity was violated by duplicity in the indictment. He argues that "each individual juror could have relied on a different combination of individual allegations to find [him] guilty of fifteen counts of possession, manufacture, or distribution of child pornography." In particular, he suggests that because of the larger images of the thumbnails admitted as additional exhibits, the jury instructions "did not specif[y] the distinct alleged act to have violated the law." He then relies on this Court's directives in *State v. Muhm* to assert that the circuit court should have provided the jury with a unanimity instruction. 2009 S.D. 100, ¶ 33, 775 N.W.2d 508, 519 (holding that "[w]here the prosecution declines to make an election on a duplicitous count and the evidence indicates the jurors might disagree as to the particular act defendant committed, a standard unanimity instruction should be given").

[¶53.] We first note that O'Neal did not raise this issue to the circuit court. "[W]hen 'an issue has not been preserved by objection at trial,' this Court may conduct a limited review to consider 'whether the circuit court committed plain error.'" *State v. Manning*, 2023 S.D. 7, ¶ 40, 985 N.W.2d 743, 756 (alteration in original) (citation omitted). "To establish plain error, an appellant must show (1) error, (2) that is plain, (3) affecting substantial rights; and only then may this Court exercise its discretion to notice the error if, (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation omitted).

[¶54.] Here, O'Neal cannot establish the first prong because there was no error. "Duplicity is the joining in a single count of two or more distinct and separate offenses." *State v. Babcock*, 2020 S.D. 71, ¶ 39, 952 N.W.2d 750, 762 (citation omitted). "In other words, a duplicitous indictment or information includes a single count that captures multiple offenses[.]" *Id.* (alteration in original) (citation omitted).

[¶55.] In this case, the indictment was not duplicitous, and it was made very clear to the jury that there was only one photo associated with each count; the larger image was simply what popped up after clicking on the thumbnail image of the photo. In fact, the jury received an instruction that specified the particular exhibit related to each count.[14] Further, the jurors were properly instructed to separately consider each count and the evidence that accompanied it, and they were also informed that their verdict as to each count must be unanimous. O'Neal's right to jury unanimity was not violated.

[¶56.] Affirmed.

[¶57.] JENSEN, Chief Justice, and KERN, Justice, concur.

[¶58.] SALTER, Justice, concurs in part and concurs specially.

[¶59.] MYREN, Justice, concurs in part and concurs in result in part.

---

14. For example, the jury was told that exhibit 1 related to count 1, exhibit 2 related to count 2, and so on. The larger images of the thumbnails were admitted at trial as the same number corresponding to the thumbnail exhibit, but with an "A," for example, 1A, 3A, etc.

#30023

SALTER, Justice (concurring in part and concurring specially).

[¶60.]     I write separately on the suppression issue.  I join the portion of the Court's opinion that resolves the question under the independent source doctrine. Although the independent source and inevitable discovery doctrines are closely related, maybe even "first cousin[s]," *State v. Garner*, 331 N.C. 491, 512, 417 S.E.2d 502, 514 (1992) (Frye, J., concurring), I would not apply the related inevitable discovery doctrine here because there was no "alternate source" of investigation "pending, but not yet realized[.]"  *State v. Boll*, 2002 S.D. 114, ¶ 21, 651 N.W.2d 710, 717 (citation omitted).[15]  Instead, the source for discovering the contraband images on O'Neal's phone was not an alternate one to be considered hypothetically—it was an independent one that actually occurred.[16]

[¶61.]     The December 11 warrant allowed officers to, in the words of the United States Supreme Court, "reseize" O'Neal's telephone through lawful means. *See Murray v. United States*, 487 U.S. 533, 542, 108 S. Ct. 2529, 2535, 101 L. Ed. 2d 472 (1988).  In *Murray*, the Supreme Court rejected the idea that unlawfully seized property must first be returned before it can be lawfully reseized:

> It seems to us . . . that reseizure of tangible evidence already seized is no more impossible than rediscovery of intangible evidence already discovered.  The independent source doctrine does not rest upon such metaphysical analysis, but upon the policy that, while the government should not profit from its

---

15.    The circuit court determined the inevitable discovery rule did not apply for similar reasons.

16.    I also agree with the view expressed by Justice Myren that the non-thumbnail images used at trial do not constitute res gestae.  These images are, as he notes, direct evidence of the charges contained in the indictment.

> illegal activity, neither should it be placed in a worse position than it would otherwise have occupied.

*Id.*

[¶62.] Regardless of the precise basis, O'Neal fails to account for the essential component of causation upon which "fruit of the poisonous tree" is based. Officer Hansen's illegal *seizure* of the phone, alone, yielded no evidence, and there is nothing to suppress. But to successfully invoke the remedy of exclusion for the contraband images discovered in the later search, O'Neal must establish that the illegality was actually exploited.

[¶63.] "When the issue is whether challenged evidence is the fruit of a Fourth Amendment violation, the defendant bears the initial burden of establishing [a] factual nexus between the constitutional violation and the challenged evidence." *State v. Rosales*, 2015 S.D. 6, ¶ 13, 860 N.W.2d 251, 256 (quoting *United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007)). The Supreme Court has held that "evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence." *Segura v. United States*, 468 U.S. 796, 815, 104 S. Ct. 3380, 3391, 82 L. Ed. 2d 599 (1984), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991).

[¶64.] And even where a defendant establishes "a factual nexus and but-for causality, evidence is [not] fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police." *Rosales*, 2015 S.D. 6, ¶ 14, 860 N.W.2d at 257 (cleaned up) (quoting *Segura*, 468 U.S. at 815, 104 S. Ct. at 3391). "Suppression is not justified unless 'the challenged evidence is in some sense the product of illegal governmental activity.'" *Segura*, 468 U.S. at 815, 104 S. Ct. at

3391 (quoting *United States v. Crews*, 445 U.S. 461, 471, 100 S. Ct. 1244, 1250, 63 L. Ed. 2d 537 (1980)).

[¶65.] Here, O'Neal has not identified how police officers exploited Officer Hansen's illegal seizure of his phone, and there is no readily apparent reason for finding resulting taint. Despite the fact that Officer Hansen's seizure of the phone was not authorized by the Fourth Amendment, he did not search it in any way. Instead, Officer Hansen placed the phone in airplane mode, shut it off, and secured it as evidence. The phone was searched only after the issuance of the December 11 search warrant which was supported by probable cause based upon what Guggenberger had reported. It is true, of course, that the police already possessed the phone, but O'Neal has not explained how the result of the search would have been different if the police had seized the phone after the issuance of the warrant.

[¶66.] The remedy of exclusion is a judicial creation that serves a specific purpose. It provides a serious consequence in criminal prosecutions to deter officers from acting unlawfully. The Supreme Court has described the "social costs" of exclusion as "substantial[,]" *United States v. Leon*, 468 U.S. 897, 907, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), and justified only where it serves the deterrent objective upon which it is premised—not reflexively upon a showing of a Fourth Amendment violation. *See Hudson v. Michigan*, 547 U.S. 586, 591, 126 S. Ct. 2159, 2163, 165 L. Ed. 2d 56 (2006) ("Suppression of evidence . . . has always been our last resort, not our first impulse.").

MYREN, Justice (concurring in part and concurring in result in part).

[¶67.] On issue one, regarding the circuit court's denial of the motion to suppress, I concur in the result. I would affirm the circuit court's denial of the motion to suppress on the grounds utilized by the circuit court–the attenuation doctrine.

[¶68.] On issue two, regarding the circuit court's denial of the motion to dismiss the indictment, I concur in the result. This record does not establish that the government's delay in prosecuting the case was "an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324, 92 S. Ct. 455, 465, 30 L. Ed. 2d 468. As the majority opinion notes in paragraph 40, the State explained the delay in prosecution was the result of the volume of images that the State needed to examine. No discussion of prejudice caused by the delay is necessary to resolve this issue.

[¶69.] On issue three, O'Neal argued that the circuit court should preclude the admission of specific photographs because the State had not previously identified those images to the defense. The record establishes that the additional images were, in fact, larger versions of thumbnail images that the State had provided to the defense in response to its request for a bill of particulars. The State asserted that when O'Neal clicked on the thumbnails on his computer, he opened the larger images, which were the child pornography the indictment charged him with knowingly possessing. These images were not other act evidence or res gestae. They were direct proof of the crimes charged by the State. The circuit court did not abuse its discretion in admitting this evidence.

#30023

[¶70.]        I concur on issues four and five.